**ECHO TRAVEL,
INCORPORATED, Plaintiff,**

v.

**TRAVEL ASSOCIATES,
INCORPORATED,
Defendant.**

No. 87–C–0044.

United States District Court,
E.D. Wisconsin.

Oct. 14, 1987.

John J. Westra, Johnson & Westra, P.C., Wheaton, Ill., for plaintiff.

Nancy J. Sennett, Foley & Lardner, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, Chief Judge.

This case involves the tort of unfair competition. Plaintiff, Echo Travel, Inc., alleges that defendant, Travel Associates, Inc., has unfairly used a picture of Daytona Beach in its advertising campaign for spring break trips.

## I. PROCEDURAL BACKGROUND

On January 9, 1987, plaintiff commenced this action and also filed a motion for a temporary restraining order. Subsequently, on January 15, 1987, this Court held a hearing on the motion for the temporary restraining order. After hearing testimony and reviewing affidavits, the Court denied the request for a temporary restraining order finding that there was no protected interest in the photographs, the photographs were not identical, and they lacked a secondary meaning. Plaintiff did not wish to have the matter scheduled for a preliminary injunction hearing. Plaintiff did, however, continue to pursue the litigation. Defendant filed an answer to the complaint and a status conference was held. Defendant, pursuant to the scheduling order set forth at the status conference, filed the present pending motion for summary judgment.

## II. BACKGROUND FACTS

In the summer of 1985, Echo Travel obtained a picture of Daytona Beach, Florida, from Jiloty Shipley and Associates, an advertising agency in the Daytona area. Echo Travel incorporated the picture into its campaign for trips to Daytona Beach in

**658**

the spring of 1986.[1] Because of the successful response to the use of the Daytona picture, Echo Travel continued to use the poster for its 1987 advertising campaign.

In late September of 1986, Travel Associates also obtained a photograph from Jiloty

Shipley and Associates for use in an advertising campaign for Travel Associates' spring break trips to Daytona Beach in the spring of 1987. The photograph obtained was similar to the photograph used by

1. This photo was used for Echo Travel's 1986 advertising.

Echo Travel the previous year.[2] Travel Associates has testified that it did not have any prior knowledge as to Echo Travel's usage of the picture. The pictures used by

2. This photo was used by Travel Associates in 1987.

Echo Travel and Travel Associates were of a beach scene in Daytona Beach, Florida. The pictures were taken by Jiloty Shipley and Associates for the purpose of promoting Daytona Beach for the Daytona Beach Chamber of Commerce. No money was paid by either travel company for the use of the pictures. No exclusive rights or limitations were placed on either travel agency as to the usage of the photograph. The pictures were and still are available free to the general public.

Presently pending are plaintiff's motion to compel the withdrawal of Attorney Nancy J. Sennett, defendant's motion to strike certain portions of affidavits submitted by plaintiff, defendant's motion for summary judgment and attorneys' fees, and plaintiff's motion to sever the attorneys' fee request from the summary judgment motion.

### III. MOTION TO COMPEL THE WITHDRAWAL OF ATTORNEY NANCY J. SENNETT AND THE FIRM SHE REPRESENTS

Plaintiff has filed a motion requesting the withdrawal of defendant's attorney and her firm on the basis that she filed an affidavit wherein she set forth a conversation she had with plaintiff's attorney. Defendant has agreed to withdraw the paragraph. By agreeing to remove the paragraph, the motion is moot.

### IV. MOTION TO STRIKE AFFIDAVIT

When plaintiff filed its response to the summary judgment motion, it also submitted several affidavits. Defendant has filed a motion to strike certain paragraphs in the affidavit of David Vander Veen and to strike five affidavits of persons who market tours at various college campuses.

#### A. David Vander Veen Affidavit

##### 1. Paragraphs 5 and 7

Defendant has moved to strike paragraphs 5 and 7 of the Vander Veen affidavit on the basis that the testimony is incompetent. Plaintiff has moved to withdraw paragraph 5 and the Court hereby recognizes that request. Plaintiff does not agree to withdraw paragraph 7. Paragraph 7 states as follows: "That his agent and employees became very familiar with the advertising campaigns of the competitors and that it is his business policy and job requirement to be familiar with said facts." It is correct to set forth that an affidavit in opposition to a motion for summary judgment must be made upon personal knowledge, devoid of hearsay, conclusory language, and statements which purport to examine thoughts as well as acting. *Carey v. Beans,* 500 F.Supp. 580 (E.D.Pa. 1980), *aff'd,* 659 F.2d 1065 (3rd Cir.1981). Nevertheless, the Court does not find that paragraph 7 is something that Vander Veen would be unable to testify to at a trial. He is president of Echo Travel, and as such, he should be aware of his employees working knowledge, his business policies, and his employment requirements. The motion to strike paragraph 7 is DENIED.

##### 2. Paragraphs 2, 4, 6 and 8

Defendant argues that these paragraphs are irrelevant because they relate to various things Vander Veen knew or did. The paragraphs provide:

2. That he is very familiar with his competition in the area of college travel tour group business.

4. That he is very familiar with these competitors advertising materials.

6. That he developed and used his poster, Exhibit A to the complaint, successfully on many college campuses at which defendant TRAVEL ASSOCIATES as well as the other competitors were doing business and he was intimately aware of the competitors' advertising materials.

8. That when he ordered the photo from Mr. Jiloty to be used in ECHO TRAVEL'S 1985–1986 poster and subsequent posters, he inquired as to whether the photo had been used by any other college campus tour operator before he ordered the same.

This evidence would be admissible at trial, and although it does not greatly affect,

if at all, the outcome of the summary judgment, the Court will not strike these paragraphs.

### 3. Paragraphs 9, 10 and 11

These paragraphs provide as follows:

9. That he was introduced to Susan Horn of TRAVEL ASSOCIATES in about 1984, and Andy Horn in 1985.

10. That he personally knew George Solvat and David Hartley when they were employees of TRAVEL ASSOCIATES for at least the preceeding seven (7) years, and five (5) years, respectively, and had discussions with them as long ago as seven (7) years and (5) years, respectively, with respect to business matters.

11. That TRAVEL ASSOCIATES operated in the same spring break tour area and, in fact, he had occasions to be supervising tours at some of the same hotels in Florida at which TRAVEL ASSOCIATES was operating.

Defendant argues that "[a]pparently, Vander Veen is expecting the Court to draw the conclusion that because he was introduced to these people and knew former employees of the defendant, that defendant had knowledge, and in fact developed its poster with the knowledge, that Vander Veen was already using the photograph." The Court notes that it did not draw the inference set forth by defendant from paragraphs 9, 10 and 11. The Court, in fact, does not draw any inference from those paragraphs. More importantly, the statements do not provide any evidence of knowledge about the actual photographs in question; paragraphs 9, 10 and 11 are struck on the basis of relevancy.

### B. Campus Persons

■ Defendant objects to five affidavits labeled C, D, F, G and H submitted by plaintiff in opposition to the summary judgment motion. These affidavits are from persons who market tours on college campuses, and all contain the statement, "[t]hat I directly associate the picture on that poster, that is, the scene, color, etc., with the ECHO TRAVEL tour to Daytona Beach and no other tour." Defendant states that the affidavits should be struck because when they were filed with the motion, they were not signed. Signed affidavits were filed four days later. The Court will not strike the affidavits on this basis. By this ruling, however, the Court is certainly not encouraging the practice of filing affidavits late.

■ As an alternative basis, defendant argues that the affidavits should be struck in their entirety because affiants are incompetent to testify about secondary meaning because they are dealers or other individuals actively engaged in promoting the trips. In proving the existence of a secondary meaning, "the state of mind of wholesale or retail distributors or their opinions about consumers, is often rejected as irrelevant. However, if the relevant buyer class consists of *both* dealers and ultimate consumers, then the state of mind of the dealers is obviously important." McCarthy, *Trademarks and Unfair Competition,* § 15:14 (2d Ed.1984); *Cf. Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 907 (7th Cir.1983) (trademark law). In the present case, the consuming public for the tours are the college students. Although the tour marketers may purchase such tours, they are not the consuming class, and as such, their association of the Daytona Beach poster with Echo Travel is not relevant as proof of secondary meaning and will not be considered by the Court.

### V. SUMMARY JUDGMENT

"A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav.,* 806 F.2d 146, 149 (7th Cir.1986). The party moving for summary judgment has the burden of proving that there is no genuine issue of material fact. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Defendant has moved for summary judgment on the ground that plaintiff does not have a superior legal right to the picture; it does not have the exclusive right to use

the photograph because the photograph was not created by Echo Travel. The photograph was developed by Jiloty Shipley and Associates, and Jiloty Shipley and Associates disseminated the posters and transparencies by the thousands to hotels, motels, college newspapers, magazines, travel agencies, travel brokers, and radio and television stations.

■■■ Two elements are required in order to establish a case of unfair competition:

(1) That the public recognizes plaintiff's symbol as identifying his goods and services and distinguishing them from those of others, and

(2) that defendant's actions cause a likelihood of confusion among the relevant buyer class.

Element (1) could be shown in either of two ways:

(a) That plaintiff's symbol was inherently distinctive; or

(b) that even if not inherently distinctive, the symbol had achieved customer recognition and "secondary meaning."

McCarthy, Trademarks and Unfair Competition, *Secondary Meaning*, § 15.4 (2d ed. 1984). Plaintiff has not raised a genuine issue of fact and the defendant is entitled to judgment as a matter of law. It is clear that the public does not recognize the photograph as only advertising Echo Travel's trips because the photograph is not inherently distinctive of Echo Travel, Echo Travel does not own the photograph, and the photograph has not achieved "secondary meaning."

### A. The Public Does Not Recognize the Photograph as Identifying Echo Travel's Trips.

#### 1. Inherently Distinctive.

■■ In order to have a protected interest in a symbol, there must exist either ownership of the symbol, a trademark, a copyright of the mark, something inherently distincitive, or a secondary meaning and a likelihood of confusion. In the present case, there does not exist any trademark or copyright. Further, plaintiff's use of the photograph is not inherently distinctive. Echo Travel was not the first to use the picture. The Daytona Beach Chamber of Commerce first used the photograph to advertise the Daytona area. Daytona used the poster for one year and during this time, the poster was widely distributed. Following this, plaintiff then used the poster for its advertising.

A symbol is inherently distinctive because of its nature. Professor McCarthy has stated that a symbol is inherently distinctive when it has "achieved customer recognition and association immediately upon adoption and use." McCarthy, *supra*, § 15.1. These types of symbols are capable of functioning as a trademark immediately upon use. The photograph is not inherently distinctive of Echo Travel; the photograph is not capable of functioning as a trademark for Echo travel.

#### 2. Proprietary Interest.

Plaintiff also lacks a proprietary interest in the photograph at issue. Echo Travel, has even admitted that it did not have any ownership rights to the photograph. Professor Nims has stated:

The essential elements of the cause of action for unfair competition or infringement of a trademark or trade name must be alleged, and the facts averred must show a right in the plaintiff which is being interferred with or endangered by defendant. If plaintiffs' right is dependent on ownership the complaint must allege such ownership. Allegations that plaintiffs' mark has acquired a secondary meaning through sales and advertising and showing also its subsequent registration may constitute a basis for a valid trade-mark right.

Nims, Unfair Competition and Trade-Marks, § 313 (1947).

Plaintiff, however, disputes that there must be some sort of proprietary interest. It cites 87 C.J.S. *Trade–Marks*, § 89 (1954) for the proposition that:

An exclusive proprietary interest such as a trademark or copyright, in the terms or symbols used to palm off the goods of

one manufacturer or vendor as those of another, is not essential to the maintenance of a suit to enjoin or redress the perpetration of the wrong, but an interest in the good will of the business is sufficient, because it is the property in the good will which is protected in all cases of unfair competition.... It is not property in the word which is protected, but fraud which is prevented.

Professor McCarthy has stated, however, that this is a minority position which is termed the "New York Rule". The "New York Rule" holds "that certain types of unfair practices may call for judicial remedies even though traditional secondary meaning and likelihood of confusion are not proven." McCarthy, *supra*, § 15.4. This "rule" originally appeared in a case called *Santa's Workshop, Inc. v. Sterling*, 282 App.Div. 328, 122 N.Y.S.2d 488 (1953). *Santa's Workshop* involved two animal farms. The plaintiff's farm was a specially designed village called Santa's Workshop. Defendant also had a farm, but originally his farm was called Nature's Magnificent Killers. Defendant subsequently changed the name to Santa's Friendly Animals and adopted "Santa Advertising." Plaintiff then filed a complaint alleging in part "palming-off", but not secondary meaning. The New York Supreme Court Appellate Division held that secondary meaning was not necessary; intentional consumer confusion and misrepresentation were sufficient.

In the present case, this Court is not persuaded that it would be appropriate to adopt the minority view expounded by the plaintiff. First, the New York courts are uncertain about the rule. Some of the New York courts in certain cases follow it, others do not.[3] Secondly, Travel Associates obtained the photograph free of charge from Jiloty Shipley and Associates. Travel Associates did not ask for that specific picture but rather for any picture which they could use in their own advertising campaign. Travel Associates testified that they had no previous knowledge of Echo Travel's use of the picture. Travel Associates did not intentionally copy or imitate the photograph of Daytona Beach used by Echo Travel. Travel Associates was using a poster which was available to anyone and freely given to anyone. There is no ownership of the picture by Echo Travel.

■ This Court is not stating that goodwill is not protected by the laws of unfair competition; rather, this Court is stating that in the absence of ownership, secondary meaning and consumer confusion must exist in order to prove that plaintiff has a right which is subject to protection.

### 3. Secondary Meaning.

When something inherently distinctive or exclusive ownership does not exist, there must be some sort of secondary meaning attached to the mark in order for the user claiming a right in the mark to obtain relief. In essence, Echo Travel would have to show that its use of the mark has caused the public to associate the picture in ques-

---

**3.** Professor McCarthy aptly summarized the confusion:

> In view of later New York state court decisions, one wonders whether the so-called New York rule is in fact a rule even in New York. In 1961 the New York Court of Appeals decided a case involving a descriptive trademark and firmly adhered to the traditional view that proof of secondary meaning is absolutely essential. No mention was made of any New York rule which would permit recovery in the absence of secondary meaning or likelihood of confusion. Several contemporaneous New York decisions failed to even mention the Santa's Workshop decision, and emphasized that secondary meaning is essential for descriptive marks. Yet, as dictum in a case involving the New York York dilution statute, the Court of Appeals observed, without cita-

tion of Santa's Workshop, that, "At one time it was necessary to show in an action for unfair competition that plaintiff's trademark or trade name had acquired a secondary meaning. Gradually, courts have begun to recognize that, in essence, an action for unfair competition turns not upon the acquisition of a secondary meaning, but upon whether the acts of the defendant can be characterized as unfair."

> The federal courts in New York seem ambivalent about the "New York Rule". Sometimes it is stated that acts such as deliberate imitation are a substitute for secondary meaning, sometimes that it is only evidence that can be used to prove the existence of secondary meaning, and sometimes both.

McCarthy, Trademarks and Unfair Competition, *Secondary Meaning*, § 15.4 (2d ed. 1984).

tion with only their company. According to Professor McCarthy, "the prime element of secondary meaning is a *mental association* in buyers' minds between the alleged mark and a single source of the product." McCarthy, *supra*, § 15.2. Furthermore, "[i]n determining whether a mark has acquired a secondary meaning, it is appropriate to consider (1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between that name or mark and a particular product or venture." Callman, The Law of Unfair Competition Trademarks and Monopolies, *Acquisition, Transfer, Abandonment*, § 1927 (4th ed. 1983). Callman further states that "secondary meaning is not proven by mere use in advertising campaigns." *Id.*

In the present case, Echo Travel only used the picture for one season. The period of time is so brief that the possibility that a secondary meaning was established is very minute. Additionally, the posters are not identical; the name of each company is on each poster, the features of each trip are listed and these features are different.

Furthermore, "[s]econdary meaning will not be recognized where the term in question may be used by others with equal veracity, equal right, and for the same purpose." Callman *supra*, § 1926. This is exactly the situation at bar. The photograph is open and free to use by anyone. Daytona Crash Airlines could ask Jiloty Shipley and Associates for the picture and use it as a background for its ads for flights to Daytona Beach. The Daytona Beach A & B Dating Service could simply ask the Daytona Beach Chamber of Commerce for a picture of Daytona Beach and receive the picture at issue for use in its advertisements. Thousands of these type of posters have been made by Jiloty Shipley and Associates and have been distributed to travel brokers and agencies, hotels, newspapers, magazines, radio and television stations, and anyone else who wanted one. Jiloty Shipley and Associates put no restrictions on the use of the picture.

The argument that the picture has become synonymous with Echo Travel is incredible in view of the fact that all these other organizations are entitled to use the photograph for their own purposes. Plaintiff has not raised a question regarding the existence of a secondary meaning.

### 4. Likelihood of Confusion.

Because plaintiff has not created an issue of fact as to the inherently distinctive nature of the photograph and the existence of secondary meaning, it is not necessary to address the element of likelihood of confusion.

### B. Summary Judgment Conclusion.

Plaintiff has not created a question of fact. It has clearly failed to present any evidence that the public recognizes the poster as identifying Echo Travel's tour because plaintiff has no proprietary right to use the poster. The poster used by Echo Travel is not inherently distinctive, and the poster has not achieved a secondary meaning. The poster was used a very short time by the plaintiff, the posters are not identical, and the names of the two companies are visible on the posters. Summary judgment in favor of the defendant is most appropriate and is hereby GRANTED.

### VI. ATTORNEY'S FEES

Defendant has filed a motion for attorney's fees. At the status conference, it was essentially agreed that the plaintiff would file a responsive brief to the motion after the summary judgment was decided. Accordingly, plaintiff is ordered to file its response within 20 days from the date of this order. Defendant is to file a reply within 10 days from the date of receipt of the plaintiff's reply.

### VII. SUMMARY

The motion to compel the withdrawal of Attorney Nancy J. Sennett and the firm she represents is MOOT. The motion to strike several of plaintiff's affidavits submitted in opposition to the summary judg-

ment motion is PARTIALLY GRANTED and PARTIALLY DENIED. Defendant's motion for summary judgment is GRANTED. Defendant's motion for attorney's fees is taken under advisement pending further briefing by the parties.