GIMIX, INC., Plaintiff-Appellant,

v.

JS & A GROUP, INC., Auto Page, Inc., and Iwata Electric Co., Defendants-Appellees.

No. 82–1303.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 3, 1982.

Decided Feb. 1, 1983.

J.B. Muskal, Leydig, Voit, Osann, Mayer & Holt, Ltd., Chicago, Ill., for plaintiff-appellant.

George H. Gerstman, Pigott, Gerstman & Gilhooly, Ltd., George B. Newitt, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for defendants-appellees.

Before PELL and CUDAHY, Circuit Judges, and BONSAL,* Senior District Judge.

CUDAHY, Circuit Judge.

This case comes before us under our jurisdiction over trademarks. 15 U.S.C. § 1121, 28 U.S.C. § 1338. Appellant Gimix, Inc. ("Gimix") sued defendants Iwata Electric Co. ("Iwata"), Auto Page, Inc., and JS & A Group, Inc. ("JS & A") for trademark infringement, false advertising, unfair competition, deceptive practices, injury to business reputation, dilution and unjust enrichment. The district court granted the defendants' motion for summary judgment on the grounds that the term in question— "Auto Page"—was generic and thus that Gimix had no protectible rights in it; thus Gimix also did not have standing to raise the false advertising claims. We affirm the district court's order, although we do so on grounds other than those relied on below.

---

* The Honorable Dudley B. Bonsal, Senior District Judge of the United States District Court for the Southern District of New York, is sitting by designation.

### I.

Plaintiff-appellant, Gimix, is a manufacturer of telephone products and computers. In 1975 Gimix began to market an automatic dialing device. The most common use of this device, although not the only use,[1] is to connect an automatic telephone answering service with a paging terminal; the machine responds to a message left with an answering service by automatically dialing a paging terminal, causing it to notify the user, via the user's "beeper," that a message has been left on the telephone answering machine. Gimix markets this device through dealers, such as telephone stores and answering machine distributors; the machine is also promoted at trade shows.

On April 26, 1976, Gimix applied for a patent on this product, which it described in the application variously as an "automatic dialer" or as an "automatic page." The device has been advertised both under the name of "Gimix Auto Page" and under the name of "Gimix," although only the word "Gimix" was registered as a trademark. Gimix contends that it nonetheless holds trademark rights in the word "Auto Page."

Defendant-appellee Iwata, is a Japanese manufacturer and exporter. In 1977 Iwata conducted a trademark search in preparation for marketing a car theft warning device under the name "Auto Page." In January of 1978, having found no prior or pending registration, Iwata began to advertise its new product under that name. In March of 1978, Iwata filed an application to register "Auto Page" as a trademark for its car theft warning devices; the registration was subsequently granted in January 1980. Defendant Auto Page, Inc. was incorporated in 1979 to act as Iwata's United States distributor for these car theft warning devices.

In May or June of 1980 Iwata also began manufacturing and selling a wireless portable paging system consisting of a short-range transmitter and receiver for use in paging persons inside buildings or within a one-mile radius. The system includes a desk-top transmitter-receiver, a micro-phone, a CB antenna and portable pocket-size receivers, or "beepers." The desk-top transmitter-receiver has buttons that can be manually pressed to signal the beepers, and the person operating the buttons can communicate with a person carrying a beeper by talking through the microphone. Auto Page, Inc. is Iwata's United States distributor for this product, which is also marketed under the name "Auto Page." Defendant JS & A advertises and sells this product of Iwata by mail.

On December 10, 1980, Gimix filed a complaint charging Iwata, Auto Page, Inc. and JS & A with trademark infringement under federal trademark law and at common law, false advertising, unfair competition, deceptive practices, injury to business reputation, dilution and unjust enrichment, and demanded a jury trial. On April 9, 1981, Auto Page, Inc. and Iwata moved for summary judgment on the ground that "Auto Page" was a generic name for the plaintiff's product and thus not an interest protectible at law. Defendants asserted that Gimix' own use of the term in its patent application and in the deposition of Richard Don, Vice-President of Gimix ("Don Deposition"), demonstrated that "Auto Page" was a noun naming the device, rather than a mark referring to its source of origin. They argued, as well, that Gimix would not be able to establish secondary meaning and that there was no likelihood of confusion, since the products were different and non-competing. In response to the motion for summary judgment, Gimix argued that the generic name for its product was an automatic dialer and that confusion was likely because the end result of all the products involved in the lawsuit was the same: paging. To support its contention that the term "Auto Page" was not generic, Gimix adduced evidence that no competing producer of paging devices except the defendant used the term; the evidence consisted of advertisements, listings in the telephone Yellow Pages, and FCC classifications. Gimix also argued that Iwata was estopped to claim that the

---

1. The device apparently can also be manually operated or connected to an alarm system.

term was generic by its own application to register the term as a trademark for its car theft warning device. Moreover, Gimix maintained that the test for genericness is public perception and that summary judgment was inappropriate since that test involves subjective reactions and requires purchaser, distributor and user testimony.

On May 21, 1981, the district court denied the defendants' first motion for summary judgment. After a period of additional discovery, a second motion for summary judgment was filed on October 26, 1981. In it Iwata and Auto Page, Inc. not only renewed their argument that "Auto Page" was a generic term but also maintained, alternatively, that it was merely descriptive and thus not a protectible interest, since plaintiff could not meet the burden of establishing secondary meaning. As evidence that the term was used to impart information about the product's function, rather than its origin, defendants proffered Gimix' description in its patent application of the device as an "automatic page," the statement in the Don Deposition that "auto page" "might be a shorter corruption of 'automatic pager'," and various items of promotional literature in which Gimix listed the product as an "auto page." The defendants also maintained in their motion that the evidence about secondary meaning was insufficient as a matter of law since Gimix had not invested an adequate amount of time or effort to develop the term as a distinctive mark. Neither side presented surveys of public reaction on this or any other point.

In its response to the renewed motion for summary judgment, Gimix pointed to the fact that no testimony about secondary meaning in the minds of buyers, dealers and distributors had been advanced by the defendants and asserted that there remained genuine issues of material fact on this as well as on other allegations of the complaint.

On November 24, 1981, JS & A also filed a motion for summary judgment with respect to the false advertising claims, which were based on various statements by it about the cost, range, ownership and other asserted advantages of the Iwata Auto Page system. JS & A maintained that the various statements complained of were not false in relation to the wireless paging system advertised by it and that the statements had no relation whatever to Gimix' product.

On January 13, 1982, Judge Will granted the defendants' motions for summary judgment, finding that the term "automatic page"—and thus also "auto page"—were generic terms for which Gimix could not claim trademark protection. Further, since Gimix had no trademark rights in the term, Judge Will ruled that it had no standing to challenge the accuracy of JS & A's advertising. He nonetheless observed that the claims did not appear to be false. It is this order which is now before us.

## II.

■ Appellant has chiefly taken issue with Judge Will's holding that "Auto Page" is a generic term. Although the issue on appeal has been drawn primarily in terms of genericness because of the district court finding and was briefed largely, although not entirely, in those terms, we may affirm the district court's granting of summary judgment on grounds different from those which formed the basis for its holding. See, e.g., United States v. Winthrop Towers, 628 F.2d 1028, 1037 (7th Cir.1980); Miller v. Gateway Transportation Co., 616 F.2d 272, 275 (7th Cir.1980). We do so with no prejudice to the parties since those alternate grounds were in fact before the court.[2]

2. Our review of the record reveals that the motions and briefs filed in connection with the defendants' second motion for summary judgment presented not only the argument that "Auto Page" was a generic term but, alternatively, that it was descriptive. Renewed Motion of Defendants Auto Page, Inc. and Iwata Electric Co., Ltd. for Summary Judgment Dismissing the Complaint, October 26, 1981; Plaintiff's Brief in Opposition to the Renewed Motion of Defendants Auto Page, Inc. and Iwata Electric Co., Ltd. for Summary Judgment Dismissing the Complaint, November 3, 1981.

We will therefore consider the following questions in sequence: First, is Gimix' alleged trademark invalid, as Judge Will held, because it is generic?[3] Second, if "Auto Page" is not a generic term, is it nonetheless unprotectible as merely descriptive of the product's qualities or functions? Third, if "Auto Page" is in fact descriptive, has plaintiff Gimix created a genuine issue of material fact as to whether the term had acquired secondary meaning by long use? Fourth, do any of the false advertising or other claims alleged survive a finding that Gimix' trademark is invalid?

### A. Genericness

A generic term is one which is commonly used as the name of a kind of goods. *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 79 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). Unlike a trademark, which identifies the source of a product, a generic term merely specifies the type, or genus, of thing into which common linguistic usage consigns that product. A common source of evidence on genericness is the dictionary. For example, the *Miller* case, the leading Seventh Circuit case on this issue, relied heavily upon the dictionary for its conclusion that "light," or its misspelled equivalent, was a generic term in relation to low-calorie beer. *See* 561 F.2d at 80–81.

Gimix here contends that the standard for genericness requires instead direct evidence, such as consumer surveys, of what the public understands by the use of a term, referring us to Learned Hand's famous "test": "What do the buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921). Gimix points to the fact that the defendants in this case submitted no direct evidence about consumer understanding of the term "Auto Page" and argue that summary judgment is inappropriate where a case thus turns upon an issue of subjective understanding.

Plaintiff's argument in this respect, however, ignores the fact that words may be classified as generic in two distinct ways. A manufacturer may select a word which is already in common use and apply it to his product according to that common meaning; the use of "light" in relation to beer is an example of this first type of generic term. However, a manufacturer may also invent a word which thereafter enters common usage and *becomes* generic. *See* 3 R. Callman, *The Law of Unfair Competition and Monopolies* § 74.2 (3d ed. 1969). It was this latter process which Judge Hand was discussing in the *Bayer* case: had "aspirin," a coined word, so entered the common understanding as to have become generic and thus no longer subject to exclusivity of use? Evidence of public understanding of the term is clearly critical with respect to this question, in deciding whether a word has degenerated from trademark status into a generic term, a term which the public has "expropriated" for the use of all speakers.

We do not understand either party in this case to argue that "Auto Page" is such a coined word turned generic. In fact, the defendants point to Gimix' use of the term in its patent application, before the public had even been exposed to the product. Thus, the only question here is whether "Auto Page" was a commonly used and commonly understood term prior to its association with the product or products at issue. And the dictionary, with its continuing catalogue of words arriving in and departing from common speech, is an especially appropriate source of evidence about the meaning attached by a linguistic group to a particular verbal symbol.

---

**3.** We reject Gimix' initial assertion that the defendants are somehow estopped to claim, or have waived, their defense that "Auto Page" is an invalid trademark by their own registration of the term. We find this claim to be without merit, both because the elements of reliance and injury necessary to estoppel are absent and because there is a strong public interest in permitting challenges to invalidity. Nonetheless our holding here, that "Auto Page" is a descriptive term incapable of being the subject of a valid trademark, may have implications for the validity of the defendants' trademark as well.

■ Based upon such evidence, we have no difficulty concluding that "Auto Page" is not a generic term. The parties both concede, and our research confirms, that the term does not appear, as such, in any dictionary. Defendants contend, however, that the word is a combination of two generic terms and thus itself generic. The problem with this argument is that both of these terms—"auto" and "page"—are susceptible of multiple meanings, making their combination particularly ambiguous. On the one hand, "auto," from an original Greek root meaning "self," is described by Webster's Third Unabridged Dictionary as having several meanings. It is used as a prefix, which in combination with "mobile" or "motive" means "self-propelling." It may also be an independent word, the short form of "automobile." According to yet another use, "auto" is a prefix which is itself the short form of the word "automatic." The word "page," similarly, is laden with diverse denotations. In its appearance as a noun, it may in modern usage signify a hotel attendant, a small boy dressed up for a wedding, or a leaf of a book. As a verb, "page" may import the actions of summoning someone (over a public address system, for example), or of numbering the pages of a book, or rifling through the pages of a book.

This abundance of meaning leads us to conclude that "Auto Page" cannot be subject to any common public understanding. Although all of the products in this case have been connected by their makers with the term "page" in order to evoke its description of summoning a person, it is not clear that a member of the public would immediately so understand the word. This inherent ambiguity is heightened by the fact that the two manufacturers seem to have used the prefix "auto" according to two different uses: Gimix for its content of "automatic," and Iwata, in the use for which it originally sought and ultimately obtained a trademark, as short for "automobile." It is difficult, indeed impossible, for us to fathom how a word which is alleged by the defendant to identify a genus or species of object can be used, as in this very case, to denote both a device to activate an alarm when a car is broken into and a machine which connects one's answering service to her paging system. Moreover, the evidence that other manufacturers and the Federal Communications Commission use a variety of different terms to designate the kind of automatic dialing device marketed by Gimix also persuades us that "Auto Page" is not a generic term.

### B. *Descriptiveness*

■ Our holding that "Auto Page" is not a generic term does not dispose of the question whether it is a protectible trademark, for a term which is found to be merely descriptive is also incapable of being the subject of a valid trademark. *See, e.g., Wilhartz v. Turco Products,* 164 F.2d 731 (7th Cir.1947); *M.B.H. Enterprises, Inc. v. WOKY, Inc.,* 633 F.2d 50 (7th Cir.1980). This court has defined such a mark as being one which is "merely descriptive of the ingredients, qualities, or characteristics of an article of trade." *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 378 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Such terms are "unsuited to the function of marks both because they are poor means of distinguishing one source of services from another and because they are often necessary to the description of all goods or services of a similar nature." *M.B.H. Enterprises, Inc. v. WOKY, Inc.,* 633 F.2d at 54.

■ Thus our initial inquiry here must be whether the term "Auto Page" is reasonably descriptive of the characteristics of the article in relation to which Gimix asserts a trademark. We hold that it is. As we have already discussed, one common use of the term "page" is to signify an individual whose role it is to summon another person, frequently because that person has received a telephone call. As a verb, "to page" is commonly understood (in a context apart from books) as meaning to locate a person via some sort of signalling system for the purpose of reaching her with an incoming telephone call. "Auto" in all of its manifestations retains some sense of self-activating

or self-operating. As a combined term, therefore, "Auto Page" is a very apt description of Gimix' product, which is capable of paging a person in response to the receipt of an incoming telephone call, without the intervention of any independent agent or actor.

The rationale for prohibiting the appropriation of such a descriptive term as a trademark rests upon the equal right of another individual producing and marketing a similar product to describe his or her product with similar accuracy. Were this right not protected by the law, elements of the language could be monopolized in such a way as to impoverish others' ability to communicate. See *M.B.H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d at 55 (attempt to register the words "I LOVE YOU" as a trademark). In recognition of the need to protect the language against incremental monopolization, this court has held that the terms "Auto Shampoo" and "Car Shampoo" were merely descriptive of the nature of a product used in cleaning and washing automobiles, *Wilhartz v. Turco Products*, 164 F.2d 731 (7th Cir.1947), and that "Telemed" merely described a process by which electrocardiograms were analyzed by computer over the telephone, *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213 (7th Cir.1978). In like fashion, we now hold that "Auto Page" is descriptive of the plaintiff's product here.

### C. *Secondary Meaning*

■ Having found "Auto Page" to be a merely descriptive term, Gimix' alleged trademark could be upheld only if it were established that the term had acquired secondary meaning in the mind of the public. In other words, although the term's "primary" meaning was merely descriptive, if through use the public had come to identify the term with plaintiff's product in particular, the words would have become a valid trademark. See *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d at 380.

■ The factors which this court has indicated it will consider on the issue of secondary meaning include "[t]he amount and manner of advertising, volume of sales, the length and manner of use, direct consumer testimony and consumer surveys." *Id.* at 380. These factors are relevant because they shed light upon the ultimate issue: how does the public regard the mark in question? *Id.* Consumer testimony and consumer surveys are the only direct evidence on this question, and the existence of neither has been suggested here. The other factors are relevant in a more circumstantial fashion. Advertising is relevant because it is the means by which a manufacturer establishes its trademark in the minds of consumers as an indication of origin from one particular source; it is especially persuasive if the exposure has been "massive." *FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671, 674 (7th Cir.1972). In this case, however, far from creating an issue of fact as to a massive advertising campaign to establish "Auto Page" in the minds of the public as its exclusive mark, Gimix has failed to counter the impression that it in fact used the term inconsistently. Some Gimix flyers tout the product as "Gimix"; others as "Gimix Auto Page." Moreover, the period of time involved here, from the introduction of plaintiff's product in 1975 until the introduction of Iwata's similar product in 1980, is so brief as to cast serious doubt upon the very possibility of having established a strong secondary meaning; by way of contrast, the Ever-Ready battery, for example, had been marketed under that name for over fifty years. *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d at 380.

■ The only arguably relevant evidence Gimix has presented on this question is an affidavit and a letter by one dealer, a Mr. Sheldon Epstein, alleging that "Auto Page" was well-known as a trademark for Gimix' product and saying that he thought its use by JS & A was confusing. Even if evidence to this effect were presented at trial, however, it is not probative of a strong connection in the mind of the *consuming public* between the term and its source. Epstein was a Gimix dealer and his affidavit and letter were conclusory in nature and did not adequately place the question of secondary meaning to consumers in issue. Gimix, as

the owner of an alleged mark we have found to be descriptive, has the burden of establishing a genuine issue of material fact as to whether its mark has attained secondary meaning in the mind of the public. *FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671, 674 (7th Cir.1972); *see also Steem-Electric Corp. v. Herzfeld-Phillipson Co.*, 118 F.2d 122, 126 (7th Cir.1940). Gimix has made no showing that sufficiently establishes such an issue of fact. We therefore hold that summary judgment was properly granted.

### III.

▇▇▇▇ The other issue argued to us on appeal is Gimix' false advertising claim, which is based on certain statements in the defendants' advertising about the cost, range, ownership, and other advantages of the Iwata Auto Page. From the cases cited in Gimix' brief, *Beech-Nut, Inc. v. Warner-Lambert Co.*, 480 F.2d 801 (2nd Cir.1973); *In re Uranium Antitrust Litigation*, 473 F.Supp. 393 (N.D.Ill.1979); *Alberto-Culver Co. v. Gillette Co.*, 408 F.Supp. 1160 (N.D. Ill.1976); *Skil Corp. v. Rockwell International Corp.*, 375 F.Supp. 777 (N.D.Ill.1974); *American Home Products Corp. v. Johnson and Johnson*, 436 F.Supp. 785 (S.D.N.Y. 1977), aff'd, 577 F.2d 160 (2nd Cir.1978), we understand plaintiffs to be attempting to raise a claim under Section 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a). This provision reads, in relevant part, as follows:

> (a) Any person who shall ... use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

To the extent that Gimix' claim is based on a "false designation of origin," it must fail with our holding that the alleged trademark is invalid as a merely descriptive term. Assuming arguendo that the complaint does state a claim under the "false description" prong of Section 43(a), appellant's argument still must fail as a matter of law. The case before us does not involve a comparative advertising claim in form, since Gimix' product is nowhere named in the defendants' advertising. *Cf. Ragold, Inc. v. Ferrero, U.S.A., Inc.*, 506 F.Supp. 117 (N.D.Ill.1980). Even if the misrepresentations covered by the Lanham Act are broader than those involved in a deceptive comparative advertising case, a plaintiff must at least show that the allegedly false or deceptive statements are of a type that are likely to have a direct impact upon sales of its own product. *See In Re Uranium Antitrust Litigation*, 473 F.Supp. at 407–409 (N.D.Ill.1979). In this case Gimix relies solely upon the contents of the advertisements in question. True or false,[4] misleading or not, this evidence is insufficient to raise an issue under Section 43(a) of the Lanham Act. Appellant has submitted no affidavits, depositions, or other material creating any issue of fact as to likelihood of impact on Gimix' sales or of confusion of customers by the advertisements in question. The defendants' motion for summary judgment was therefore properly granted.

### IV.

All of the plaintiff's other claims—infringement, dilution, unfair competition, deceptive practices, injury to business reputation and unjust enrichment—depend upon the allegations of trademark infringement and false advertising discussed above. Since we have held that Gimix does not have a valid trademark in the term "Auto Page" and that Gimix has not made a showing sufficient to create a material issue of fact as to the false advertising claim, summary judgment is appropriate as to all of those related claims as well.

---

4.  The district court persuasively analyzed the advertisements and concluded that they were not false. We see no reason to quarrel with this analysis.

The order of the district court is hereby affirmed.