

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2002

# Oliveira v. Irvington Police

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-3643

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Oliveira v. Irvington Police" (2002). *2002 Decisions.* Paper 444.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/444

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


NO. 00-3643


JAIME OLIVEIRA, LIEUTENANT;
LADIMIR TAVARES, SERGEANT,
                              Appellants

v.

THE TOWNSHIP OF IRVINGTON; THE
IRVINGTON POLICE DEPARTMENT; KEVIN HUGHES,
OFFICER; GEORGE VENTURI, CAPTAIN; STEVEN
PALAMARA, CHIEF; JOHN DOES 1-10, (representing one
or more unknown defendants); JAMES T. GALFY, DEPUTY CHIEF


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 98-cv-00956)
District Judge:  Hon. William G. Bassler


Submitted Under Third Circuit LAR 34.1(a)
July 22, 2002

Before:  SLOVITER, NYGAARD, and BARRY, Circuit Judges

(Filed: July 25, 2002)


OPINION OF THE COURT SLOVITER, Circuit Judge.

     Jaime Oliveira and Ladimir Tavares, members of the Irvington Police Department in New Jersey, brought suit in the United States District Court for the District of New Jersey, alleging harassment, discrimination, hostile work environment, retaliation, and various tort claims against the Irvington Police Department, the Township of Irvington, Officer Kevin Hughes, Captain George Venturi, Chief Steven Palamara, and Deputy Chief James Galfy.  Plaintiffs brought their claims pursuant to the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann.  10:5-1 et seq. (2002), New Jersey common law, and 42 U.S.C.  1983 (2002).  The District Court consolidated their complaint with that of their fellow officer, Frank Pascucci.
     The defendants filed a motion for summary judgment and the District Court granted that motion as to some state tort claims and the  1983 claims, and denied summary judgment as to other state claims and the claims brought pursuant to the NJLAD.  Because the District Court dismissed all federal claims, it dismissed the remaining state claims without prejudice to their being filed in state court.  Appellants have begun a proceeding in state court.  Here, they appeal the dismissal of their claims under  1983.  The District Court had jurisdiction over the  1983 claims pursuant to 28 U.S.C.  1331 and 1343(a)(3), and had supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.  1367.  We have jurisdiction under 28 U.S.C.  1291.
                         BACKGROUND
     Plaintiff Jaime Oliveira is a police officer with the Irvington Police Department. He began his employment as a patrolman in 1984, and was promoted to sergeant in 1989,

and to lieutenant in 1994. He remains employed in this capacity. Oliveira is of Portuguese-American/Hispanic descent.

The other plaintiff, Ladimir Tavares, is also a police officer with the Irvington Police Department where he remains currently employed. He began his employment in 1985 and was promoted to sergeant in 1995. Tavares is of Castilian/Brazilian/Portuguese-American descent.

Both plaintiffs allege a long history of discrimination within the Irvington Police Department. Oliveira contends that his patrol partner routinely made racially-discriminatory comments to him, as well as demeaning comments about other minorities. When Oliveira complained to his supervising officer and to Defendant Venturi, he was told to ignore his partner because such comments were "normal" and that Oliveira should "deal with it." App. at 15. Oliveira contends that Venturi harassed him because of his race, telling Oliveira that he only advanced in the department because he was Hispanic. Oliveira also complained that Venturi used his position as the head of Internal Affairs to tape Oliveira's private phone calls. Oliveira contends that in 1996, Venturi apologized for harassing him, explaining that he just learned that people of Portuguese descent are not actually Hispanic but are considered Caucasian. Oliveira contends that Venturi then explained that "he did not like Blacks or Hispanics." App. at 17. Another patrolman, Officer Valenzuela, testified in a deposition that African-Americans and Hispanics are mistreated in the department.

In March 1997, another officer, Defendant Hughes, filed a criminal complaint against Oliveira and Officer Frank Pascucci for allegedly scratching Hughes' car. Hughes consulted with Venturi before filing the complaint, who, Oliveira contends, assisted Hughes in filing the complaint. Sometime thereafter, Oliveira discovered an earlier report stating that Hughes' car was already damaged and he presented that report to Defendant Chief Palamara for use as exculpatory evidence. Palamara did not forward the report to the county prosecutor because he refused to get involved after a criminal complaint had been filed and because he assumed Oliveira would forward the report to the prosecutor himself. Hughes eventually voluntarily withdrew his complaint in exchange for the promise of Oliveira and Pascucci not to file any charges against Hughes.

In 1996, Oliveira passed the captain's test and was placed on the civil service list for promotions. Oliveira contends that vacancies arose but that the Department failed to promote him on account of his race before the list expired. Defendant Palamara responds that Oliveira was sixth on the list and only one officer who was ranked ahead of him was actually promoted. After filing this lawsuit, Oliveira contends that he was not given requested overtime or assignments, although officers with less seniority were given those benefits. Oliveira also contends that when he was out on sick leave, he received more home visits than did other officers out on sick leave, and the sick leave policy refusing permission to leave home was applied to him more frequently than to other officers.

After Officer Tavares was promoted to sergeant, he was assigned to Internal Affairs as a detective and was taken off of the midnight shift, a shift he previously had held and which is generally considered undesirable. Tavares claims that when he worked in Internal Affairs, he was the victim of discriminatory and harassing behavior inflicted by Venturi, and that he reported this behavior to Palamara who told him "not to worry about it." App. at 140. In Tavares' affidavit, he notes that of the twelve Hispanic officers in the Irvington Police Department, only one is assigned to the day shift, and that there is only one Hispanic patrolman in the detective bureau.

Palamara was served with Tavares' complaint on March 5, 1998. The next day, Palamara removed Tavares from his position in Internal Affairs and reassigned him to the midnight shift. Palamara contends Tavares had to be transferred because he breached the confidentiality policy of Internal Affairs by sharing information with his lawyer. Tavares claims that the transfer was retaliation for filing his complaint, that after his transfer he was passed over for positions for which he was qualified, and that he received inequitable sick leave treatment and other forms of retaliation. He claims that non-minority sergeants junior to him were given day shifts while he was kept in the midnight shift. He also contends that after he was involved in a shooting incident, he was denied his request for an administrative day off, a request that the Department has a practice of granting after any officer is involved in a shooting incident.

II.

DISCUSSION

We give plenary review to a grant of summary judgment, applying the same test as the District Court. See Crissman v. Dover Downs Entm't, Inc., 289 F.3d 231, 233 (3d Cir. 2002) (en banc). In making this determination, we must draw all reasonable inferences in favor of the non-moving party. Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 978 (3d Cir. 1993), (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

A.

Appellants raise three issues on appeal. First, Tavares contends that the District Court improperly dismissed the count of his complaint alleging that he was retaliated against for filing the complaint in this case. Count 28 of his Third Amended Complaint alleged retaliation for filing his initial complaint in this matter and for exercising his rights under the NJLAD and 1983. The District Court dismissed this count along with all the state tort claims filed pursuant to the New Jersey Tort Claims Act. Tavares argues on appeal that the retaliation count was not only a tort claim, but also was brought pursuant to the NJLAD and 1983, and that the District Court did not properly consider this claim under those two statutes.

Although the District Court listed this count among the counts dismissed pursuant to its rejection of the tort claims, the court does appear to have considered retaliation under the NJLAD and allowed that claim to go forward. In denying the defendants' motion for summary judgment with respect to Tavares' NJLAD claim, the District Court specifically noted that both plaintiffs "assert that they were harassed and retaliated against regarding their benefits," App. at 44 (emphasis added), and that "Defendants fail to prove by a preponderance of the evidence that there was a legitimate, non-retaliatory reason for the various actions that were taken against Plaintiffs Oliveira and Tavares." App. at 44-45 (emphasis added). Significantly, Tavares' allegations of retaliation survive, not only through the NJLAD but also through the Conscientious Employee Protection Act, N.J. Stat. Ann 34:19-3 (2002), New Jersey's whistleblower statute, a claim for which the District Court denied the defendants' motion for summary judgment.

B.

On appeal, Oliveira and Tavares both claim violations of their First Amendment rights pursuant to 1983 for complaining about the discriminatory conduct of the defendants. In their complaint, they specifically allege violations of the Fourth and Fourteenth Amendments under 1983, but make no mention of the First Amendment. Because this issue was never briefed before the District Court or considered by that court, we cannot consider it for the first time on appeal. See In re City of Philadelphia Litig., 158 F.3d 723, 727 (3d Cir. 1998) (noting the "well established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court") (citation omitted).

C.

Finally, appellants argue that the District Court erred in denying their claims brought pursuant to 1983. They allege that the defendants violated their due process and equal protection rights by engaging in discriminatory and harassing behavior or, in the case of the supervisors, the Police Department, and the Township, by aiding and abetting the improper conduct. On appeal, they appear only to challenge the District Court's rejection of their claim under the Equal Protection Clause.

The defendants all contend that, as government officials engaged in discretionary functions, they are entitled to qualified immunity from suits brought under 1983. See Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997). An individual is immune if his or her "'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. at 399 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Where a defendant asserts this defense in a motion for summary judgment, the plaintiff has the initial burden to prove that the defendant's conduct violated some clearly established right. Id. Thus the inquiry must begin with the question of whether the plaintiffs' allegations are sufficient to establish "a violation of a constitutional right at all." Id. (citation omitted).

In order to establish a prima facie case of discrimination under the Equal Protection Clause, appellants needed to prove that they were members of a protected class and that they received different treatment than that received by other similarly-situated individuals. See Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir.

1992).  In other words, they must prove the existence of purposeful discrimination.  Id.

As a preliminary matter, despite the fact that the complaint states that Tavares is of "Brazilian/Portuguese-American" descent, App. at 74, and both Oliveira and Tavares alleged violations of the equal protection clause in their complaint, the District Court stated that only Oliveira alleged that he was a member of a protected class, citing to the appellants' opposition brief to the summary judgment motion.  The District Court noted that, although there was some dispute as to whether Oliveira could be considered "Hispanic" because he is of Portuguese descent, the court would consider him "Hispanic" for purposes of an equal protection argument.  App. at 51 (citing Peightal v. Metropolitan Dade County, 940 F.2d 1394 (11th Cir. 1991) (defining "Hispanic" along cultural and linguistic lines)).

The District Court concluded that Oliveira did not explain how he was treated differently because of his race, especially having conceded that he was promoted to Sergeant in 1989.  The District Court noted Oliveira's allegations that he was called names such as "spic," and the possibility that those facts give rise to a claim for harassment, but found the name-calling insufficient to sustain a claim for an Equal Protection violation.  Although the District Court did not discuss Tavares' allegations in this section, we take notice that they are no stronger in alleging an Equal Protection violation than are Oliveira's allegations.

Appellants argue the District Court's determination in this respect is inconsistent with the District Court's determination that they had made out a claim for harassment and hostile work environment under the NJLAD.  However, a claim of an Equal Protection violation requires proof that the appellants were treated differently than similarly-situated individuals because of their race, whereas a claim under the NJLAD requires a showing that the defendants' conduct "(1) would not have occurred but for the employee's [race]; and it was (2) severe or pervasive enough to make a (3) reasonable [member of a protected class] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive."  Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. 1993).  Thus, the legal standards for claims under the NJLAD and  1983 are different, and appellants failed to satisfy their burden to show a sufficient basis for their  1983 claim to withstand summary judgment.  Their contentions are supported almost exclusively by their own testimony and affidavits.  They never filed any written complaints about discrimination to the Police Department.  They did  not provide the races of those individuals who were allegedly given better assignments or sick leave treatment.  See, e.g., App. at 134 (listing officers who were given more lenient sick leave treatment but not providing their race or ethnicity).

We express no opinion on the viability of appellants' NJLAD claim.  The parties will have an opportunity to present their views on the merits of the NJLAD claim before the New Jersey courts.  Having dismissed the only federal claim, the District Court was free to decline to exercise supplemental jurisdiction over the NJLAD claim.

III.

CONCLUSION

For the reasons set forth herein, we will affirm the District Court's grant of summary judgment to the defendants.

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/Dolores K. Sloviter
Circuit Judge