Dissenting opinion filed by Circuit Judge STOLL.
PROST, Chief Judge.
Nantkwest, Inc. appeals from a decision of the United States District Court for the Eastern District of Virginia granting-in-part and denying-in-part the United States Patent and Trademark Office (“USPTO”) Director’s motion for fees. In its order, the district court granted the Director’s requested witness’ fees but denied the requested attorneys’ fees. The Director appeals the court’s denial of attorneys’ fees. We reverse.
I
In 2001, Dr. Hans Klingemann filed a patent application directed to a method of treating cancer by administering natural killer cells. After several years of examination, the USPTO rejected Dr. Klingem- *1354 aim’s application on obviousness grounds. The Patent and Trial Appeal Board (“PTAB”) affirmed the examiner’s rejection and Nantkwest, as assignee of the application, appealed to the district court under 35 U.S.C. § 145. We have provided a summary of the technology and the proceedings at the USPTO and district court in Nantkwest’s companion appeal. NantKwest, Inc. v. Michelle K. Lee, No. 2015-2095, 686 Fed.Appx. 864, 865-68, 2017 WL 1735330 (Fed. Cir. May 3, 2017).
Section 145 provides that an applicant dissatisfied with the PTAB’s decision may appeal directly to the United States District Court for the Eastern District of Virginia in lieu of immediate appeal to this court. 35 U.S.C. § 145. The statute further provides that the applicant must pay “[a]ll of the expenses of the proceeding,” id., “regardless of the outcome,” Hyatt v. Kappos, 625 F.3d 1320, 1337 (Fed. Cir. 2010) (en banc), aff'd and remanded, 566 U.S. 431, 132 S.Ct. 1690, 182 L.Ed.2d 704 (2012). After prevailing at the district court on the merits, the Director filed a motion to recover $111,696.39 of the USP-TO’s fees under the § 145 expense provision. See J.A. 84 (seeking $78,592.50 in attorneys’ fees (including paralegal fees) and $33,103.89 in expert fees).[1]
Although the district court granted the USPTO’s expert fees, it denied its requested attorneys’ fees, citing the “American Rule.” J.A. 10-11. Under this Rule, litigants pay their own attorneys’ fees, win or lose, unless a statute or contract provides otherwise. Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010). Applying this Rule, the court found that in order to recover these fees, “ [defendants must be able to articulate a statutory provision that clearly and explicitly allows them to recovery attorneys’ fees from Plaintiff.” J.A. 3-4. The district court concluded that the “[a]Il expenses” provision of the statute was neither sufficiently specific nor explicit enough for the authorization of attorneys’ fees under this Rule. Id. On appeal, the Director argues that the district court erred by excluding the USPTO’s attorneys’ fees under § 145. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(C).
II
The principal issue on appeal is whether § 145’s “[a]ll expenses of the proceedings” provision authorizes an award of the USP-TO’s attorneys’ fees under this section.[2]
We review a district court’s interpretation of a statute de novo. Weatherby v. Dep’t of the Interior, 466 F.3d 1379, 1383 (Fed. Cir. 2006). “In construing a statute or regulation, we begin by inspecting its language for plain meaning.” Meeks v. West, 216 F.3d 1363, 1366 (Fed. Cir. 2000) (citation omitted). In the absence of a definition of a term, courts give the words their “ordinary, contemporary, common meaning.” Williams v. Taylor, 529 U.S. 420, 421, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).
Under 35 U.S.C. § 145,
[a]n applicant dissatisfied with the decision of the [PTAB] ... may, unless appeal has been taken to the United States *1355 Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the Eastern District of Virginia.... All the expenses of the proceedings shall be paid by the applicant.
Id. (emphasis added).
At the outset, we observe that we have previously construed other portions of § 145. See, e.g., Hyatt, 625 F.3d at 1322. Although Hyatt resolved a different issue than the one presented here, we based our holding, in part, on our recognition of the breath of the “all expenses” provision and the substantial financial burden that applicants must bear for initiating § 145 appeals. Id. at 1337. “To deter applicants from exactly the type of procedural gaming that concerns the Director, Congress imposed on the applicant the heavy economic burden of paying ‘[a]ll the expenses of the proceedings’ regardless of the outcome.” Id. (alteration in original) (citing 35 U.S.C. § 145). Put another way, Congress intended that all applicants unconditionally assume this financial burden when seeking review directly in district court—whether they win, or lose. We thus concluded that Congress drafted this provision without requiring any degree of success on the merits (much less a prevailing party) as a necessary precedent for shifting this “heavy economic burden” onto the applicant. Id.
A
Before determining whether § 145 authorizes an award of the USPTO’s attorneys’ fees, we first address the government’s argument that the American Rule does not apply to these proceedings. Like the Fourth Circuit, we have substantial doubts that this provision even implicates this Rule. See Shammas v. Focarino, 784 F.3d 219, 223 (4th Cir. 2015), cert. denied sub nom. Shammas v. Hirshfeld, — U.S. -, 136 S.Ct. 1376, 194 L.Ed.2d 360 (2016) (concluding that a nearly identical statutory provision governing Trademark appeals (15 U.S.C. § 1071(b)(3)) does not “operate! ] against the backdrop of the American Rule” because that provision made no reference to prevailing parties).
In response to the government’s arguments, Nantkwest relies on Baker Botts L.L.P. v. ASARCO LLC to support its position that the American Rule applies whenever a litigant seeks to recover attorneys’ fees. — U.S.-, 135 S.Ct. 2158, 2164, 192 L.Ed.2d 208 (2015).[3] Baker Botts, however, does not stand for a general proposition that courts must apply the American Rule’s specific and explicit requirements to all fee statutes irrespective of a prevailing party as Nantkwest contends. Rather, it demonstrates that a statute must meet these requirements before a party may recover its fees when attempting to extend its reach to ancillary litigation Congress never intended. See id. at 2165. Nevertheless, despite our doubts as to the applicability of the American Rule here, we analyze § 145’s “[a]ll expenses of the proceeding” provision assuming the Rule applies, as we conclude that even under this Rule, the expenses at issue here include the USPTO’s attorneys’ fees.
B
Under the American Rule, “the prevailing litigant is ordinarily not entitled *1356 to collect a reasonable attorneys’ fee from the loser.” Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Courts uniformly recognize an exception to this general proposition, however: when the statute itself “specific[ally]” and “explicit[ly]” authorizes an award of fees, the prevailing party may be entitled to collect its fees. Id. at 260, 95 S.Ct. 1612. In agreement with two other circuits, we conclude that “expenses” here includes attorneys’ fees. See Shammas, 784 F.3d at 222-23 (holding that the term “expenses” covers the USPTO’s attorneys’ fees); United States v. 110-118 Riverside Tenants Corp., 886 F.2d 514, 520 (2d Cir. 1989) (observing that attorneys’ fees are “expenses of the proceedings” under § 6342 of the Internal Revenue Code).[4]
1
The definitions and explanations that standard legal dictionaries and treatises provide for the term “expense” support this conclusion. Wright & Miller on Federal Practice and Procedure, for example, defines this term as “includ[ing] all the expenditures actually made by a litigant in connection with the action,” including “attorney’s fees.” 10 Charles Alan Wright et al., Federal Practice and Procedure § 2666 (3d ed. 1998). Similarly, Black’s Law Dictionary defines “expenses” as “expenditure[s] of money, time, labor, or resources to accomplish a result.” Black’s Law Dictionary 698 (10th ed. 2014) (“Black’s”) (emphasis added).
The dissent summarily dismisses these definitions, declaring that “they are not contemporaneous with Congress’s introduction of the word ‘expenses’ into the Patent Act in 1839.” Dissenting Op. 1367. Relying on Nineteenth Century dictionaries instead, the dissent concludes that “the words ‘expense,’ ‘cost,’ and ‘damage’ were considered synonymous around the time of the 1839 Amendments.”[5] Id. at 1363. Not so. The Patent Act of 1836 specifically distinguished among these three terms. Compare Act of July 4, 1836, ch. 357, 5 Stat. 117, § 9 (“Moneys received into the Treasury under this act shall constitute a fund for the payment of salaries of the officers and clerks herein provided for, and all other expenses of the Patent Office.” (emphasis added)), with id. § 14 (“[W]hen-ever, in any action for damages for making, using, or selling the thing whereof the exclusive right is secured by any patent ..., a verdict shall be rendered ..., it shall be in the power of the court to render judgment for any sum above the amount found by such verdict as the actual damages sustained ..., not exceeding three times the amount thereof, according to the circumstances of the case, with costs.” (emphases added)). The historical statute that the dissent relies on simply does not support its conclusion. If anything, this statute lends support to the majority’s position by expressly characterizing the salaries of USPTO officers and clerks and as “expenses.” Id. § 9. The Supreme Court has observed the distinction between “ex *1357 penses” and “costs” recently, providing an interpretation that comports with the modern definitions that the dissent disregards.
In Taniguchi v. Kan Pacific Saipan, Ltd., the Court recognized the distinction between costs and fees; determining that the term “fees” includes “expenses borne by litigants for attorneys.” 566 U.S. 560, 132 S.Ct. 1997, 2006, 182 L.Ed.2d 903 (2012). There, the Court distinguished “expenses” from the more limited term “costs,” which represent only a fraction of expenses, relying specifically on the 1998 Wright & Miller treatise cited above.
Although costs has an everyday meaning synonymous with expenses, the concept of taxable costs ... is more limited.... Taxable costs are limited to relatively minor, incidental expenses[;] ... such items as clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts.... Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators.
Id. at 2006 (emphasis added) (citations and quotation marks omitted). The Court provided this analysis in direct support of its holding that resolved the breadth of taxable costs under 28 U.S.C. § 1920. Id. at 2000, 2006. Notably, neither the dissent nor Nantkwest provide contrary authority where the Supreme Court has held that the term “expenses” categorically excludes attorneys’ fees.
Nantkwest argues here that the term “expenses” lacks the requisite specificity to overcome the presumption of the American Rule that each party will pay its own attorneys’ fees. Although Nantkwest does not deny that this term supplies sufficient breath to cover the USPTO’s attorneys’ fees, it contends that the American Rule demands more. In particular, it argues “[o]n its own, the term ‘expenses’ is ambiguous.” Appellee’s Br. 32. As support, Nant-kwest relies heavily on the fact that other federal statutes under various titles illustrate that Congress has employed the term “expenses” to authorize attorneys’ fees either in addition to expenses (e.g., “expenses and attorneys’ fees), or as a component of them (e.g., “expenses including attorneys’ fees).[6] In other words, the term “expenses,” Nantkwest contends, can either include or exclude attorneys’ fees depending on the statute and, thus, the term is “far from clear.” Appellee’s Br. 33. Reviewing the list of statutes that Nantkwest provides, however, we conclude that Congress made clear that it meant to award attorneys’ fees under the broader term “expenses” within the context of these particular proceedings.
As noted above, the ordinary meaning as defined in dictionaries and the Supreme Court’s interpretation of this term lend significant weight to the. conclusion that when Congress used the phrase “all ex *1358 penses,” it meant to include attorneys’ fees. The fact that the dissent and Nant-kwest compiled a list of statutory provisions for which Congress on occasion employed the term “expenses” to authorize attorneys’ fees in addition to expenses in other contexts cannot be sufficient to dislodge the reasonable and ordinary meaning of this term. This is especially true in the context of this particular statutory provision where Congress explicitly authorized compensation for “[a]ll expenses of the proceedings.” 35 U.S.C. § 145. At best, these examples demonstrate that Congress will not confine itself to a single word or phrase when referencing attorneys’ fees. Yet under Nantkwest’s narrow view, a statute could not meet the American Rule’s heightened demands without using the precise words “attorneys’ fees” or some equivalent. For example, when asked during oral argument to propose other language that Congress could have employed to satisfy the American Rule, Nantkwest cited “reasonable compensation of attorneys” as the only alternative.[7] The dissent shares this view, stating and restating that the statute cannot award attorneys’ fees because Congress did not employ these exact words. See, e.g., Dissenting Op. 1360 (“Section 145 neither mentions ‘attorneys’ fees’ nor reflects congressional intent to authorize them.”); id. at 1361 (“The phrase ‘attorneys’ fees’ is not mentioned [in § 145]....”).
The Supreme Court, on the other hand, has provided other suitable alternatives without using any of these words. In Baker Botts for instance, the Court recognized the term “litigation costs” as one such example. 135 S.Ct. at 2164. Clearly, “litigation costs” does not include the phrase “attorneys’ fees.” Yet the dissent offers little to justify its conflict with the Supreme Court’s conclusion that the use of the term “litigation costs” overcomes the American Rule. While a reference to a “prevailing party” may “usually” appear in fee-shifting statutes, id., the Supreme Court has never suggested that such a reference is a requirement for fee shifting, contrary to what the dissent argues. See Dissenting Op. 1365 (“Nothing in [§ 145] confines the award of expenses to a prevailing party.”).
The law neither confines Congress to the use of any particular term or phrase to satisfy the American Rule’s specificity requirement nor requires that Congress employ the words, “compensation,” “fee,” or “attorney” to meet it. The term “expenses,” like “litigation costs,” is another example where Congress authorized fee awards without including the words “fees” or “compensation” in the statute. Nant-kwest and the dissent simply demand too much.
Our conclusion that this term authorizes the USPTO’s fee award is particularly important here in the context of § 145’s all expenses provision. This unique provision requires that applicants uniformly name the Director as defendant to their suits. In representing the USPTO’s interests, the Director relies on personnel from the Office of the Solicitor. ■ See 37 C.F.R. § 11.40(b). These attorneys—the Solicitor, his deputy, and associates—and supporting paralegals receive fixed salaries as compensation for their government work. As salaried employees, they do not bill individual hours for their work, nor do they collect fees from those whom they represent. In this context, we characterize the overhead associated with their work more precisely as an “expense” to the government than a “fee.” Compare Black’s 698 *1359 (defining “expense” as “expenditure^ of money, time, labor, or resources to accomplish a result”), with Black’s 154 (defining “attorney’s fee” as “[t]he charge to a client for services performed for the client, such as an hourly fee, a flat fee, or a contingent fee”). Under the dissent and Nantkwest’s view, Congress must use the word “fee” instead for the USPTO to receive remuneration. We do not view the American Rule so narrowly. To conclude otherwise, our interpretation would force Congress into the untenable position of selecting a word that must be applied in an unconventional and imprecise manner in the context of these unique proceedings.[8]
Given the Supreme Court’s construction of “expenses,” the guidance dictionary and treatises provide on this term, and the context in which Congress applied it, we conclude that the term “expenses” includes the USPTO’s attorneys’ fees under § 145.
2
Nantkwest makes an additional argument regarding whether the USPTO’s attorneys’ fees are “expenses of the proceedings.” 35 U.S.C. § 145. It contends that this provision does not provide a basis for attorneys’ fees because the USPTO would have had to pay the portions of these full-time employees’ salaries regardless of Nantkwest’s suit.
We disagree. First, we have accorded similar relief in the past in the context of other salaried attorneys. In Raney v. Federal Bureau of Prisons, for example, we awarded salaried union attorneys an apportionment of their salaries because the litigation required the lawyers to divert their time away from other pending matters. 222 F.3d 927, 935 (Fed. Cir. 2000). Second, our sister circuits have recognized the costs associated with these diversions and awarded fees to salaried employees as well. See, e.g., Shammas, 784 F.3d at 223 (recognizing that the USPTO “incurred expenses when its attorneys were required to defend the Director in the district court proceedings, because their engagement diverted the PTO’s resources from other endeavors”); Wisconsin v. Hotline Indus., Inc., 236 F.3d 363, 365-66 (7th Cir. 2000) (holding that salaried government employees could recover their fees as they relate to the government’s opposition to an improper removal of a state court case).
Section 145 proceedings similarly impact the USPTO’s resources. These costs are particularly relevant here, where the USP-TO attributes over seventy percent of its total expenses ($78,592.50 of the $111,696.39) to attorneys’ fees. Nantkwest filed its appeal in district court and enjoyed the pro-applicant benefits of that forum. See Hyatt, 625 F.3d at 1336-37 (obtaining de novo review with the ability to introduce new evidence). Under Nant-kwest’s view, the government’s recovery would be limited only to certain ad hoc *1360 expenses, e.g., printing, travel, expert witness costs, Appellee’s Br. 35, while ignoring the vast majority of the expenses the USPTO incurred as the proximate cause of Nantkwest’s appeal. We cannot subscribe to this view.
It cannot be credibly disputed that the USPTO dedicated time and resources of its attorneys to the defense of this litigation when it could have otherwise applied those resources to other matters. Without acknowledging these concerns, Nantkwest essentially endorses a rule that would theoretically permit an award if the USPTO retained outside counsel to defend its interests but not if it elected to proceed on its own. Logically, the meaning of “of the proceedings” cannot turn on the type of attorneys retained to defend the government’s interests. As we previously observed, we must equally regard salaried attorneys’ time and “tak[e] into account the opportunity costs involved in devoting attorney time to one case when it could be devoted to others.” Raney, 222 F.3d at 934-35.[9] We thus conclude that § 145 entitles the USPTO to compensation for the diversion of its resources in the defense of § 145 appeals.
Accordingly, we hold that “[a]ll expenses of the proceedings” under § 145 includes the pro-rata share of the attorneys’ fees the USPTO incurred to defend applicant’s appeal. To conclude otherwise would conflict with Hyatt, where we recognized the “heavy economic burden” that § 145 shifts onto applicants for electing this favorable appellate path. Hyatt, 625 F.3d at 1337.
We have considered. Nantkwest’s remaining arguments in this appeal but find them unpersuasive as well.
Conclusion
For the foregoing reasons, we reverse the district court and remand the case for it to enter an additional award of $78,592.50 in favor of the Director.
REVERSED AND REMANDED

. To arrive at this value, the USPTO calculated the pro-rata share of the salaries of the two attorneys and one paralegal who worked on the appeal. J.A. 83-84. Nantkwest did not challenge the number of hours expended or the pro-rata share of salaries the USPTO proffered at the district court. J.A. 138-40.

. Throughout its briefing, the Director routinely refers to these attorneys’ fees as "personnel expenses.” See, e.g., Appellant’s Br. 3. Because there is no genuine dispute that the terms "personnel expenses" and "attorneys' fees” are interchangeable within the context of this appeal, we refer to them as "attorneys’ fees” throughout this opinion.

. In that case, although the statute made no reference to prevailing parties, Congress drafted the fees provision to apply exclusively to non-adversarial bankruptcy proceedings. Id. at 2163-65. Nevertheless, Baker Botts used this provision as a basis to recover its fees for work it performed in a related, but adversarial, fee-defense litigation. Id. at 2166. By applying this statute to a proceeding Congress never contemplated in the first instance, Baker Botts effectively sought its fees in the absence of a fee statute altogether.

. The court in Riverside relied on the statutory language of this section’s "expenses of the [foreclosure] proceedings" provision when awarding the Apartment Corporation its attorneys' fees. See id. ("The attorneys' fees incurred ... for selling the shares ... are in ' the same category as expenses of foreclosure and sale proceedings....”).

. The dissent's position here not only lacks support in the briefing, but also directly undermines the party’s position it purports to advance. Specifically, in arguing that § 145 does not include attorneys' fees, Nantkwest cited the same dictionary and definitions that the dissent now concludes bear no relevance to the interpretation of this statute. See Appel-lee's Br. 27-28 (relying on the 2014 Black’s Law Dictionary definition for the term, "expense”).

. Nantkwest cites approximately twenty such statutory provisions covering a wide range of areas of law including: bankruptcy, administrative procedure, judicial proceedings, and financial management. Appellee's Br. 32-34. Some of these statutes list attorneys’ fees in addition to expenses while others list attorneys’ fees as part of expenses. Roughly fifty percent of those statutes cited do not support the Appellee’s view because they treat attorneys’ fees as part of expenses. Id. The fact that the remaining provisions support Nantkwest’s position is neither reliable nor significant within the context of § 145 proceedings. Similarly, the dissent provides its own list of federal statutes, more than half of which actually support the majority’s view as well. Dissenting Op. 1363-65. Notably, neither the dissent nor Nantkwest provide any indication regarding which—if any—of these cited provisions Congress enacted prior to the Supreme Court’s creation of the "explicit” and "specific” criteria under the American Rule.

. Oral Argument 12:42-13:17, http:// oralarguments.cafc.uscourts.gov/mp3/2016-1794.mp3. We perceive no practical difference between "attorneys’ fees” and the “reasonable compensation of attorneys” example Nantkwest provided.

. Congress's contrasting use of the term "attorneys' fees” under 35 U.S.C. § 285 provides further evidence to this point. There, Congress chose not to award all expenses to the prevailing party, but only attorneys’ fees. The dissent appears to ignore this distinction, instead requiring that Congress recite the phrase "attorneys' fees” to cover at least a subset of these "expenses” simply because other portions of Title 35 employ that phrase. Dissenting Op. 1361-62. Put another way, under the dissent’s view, Congress must rigidly employ a phrase such as "attorneys’ fees and other expenses” in place of the broader term "expenses,” which already includes these fees. Relying on a flawed premise, the dissent simply dismisses—even as a theory— that Congress could have intended a broader compensation scheme under § 145 than § 285. Congress indisputably has the authority to employ a broad word over other narrower alternatives if it so chooses. And it may do so irrespective of how many times it amended other portions of Title 35 or employed narrower alternatives for other sections of the Code.

. Without shouldering these expenses itself, Nantkwest seeks a ruling that essentially requires other applicants to fund its own appeal. See Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 10, 125 Stat. 284, 316 (2011) (recognizing the USPTO as exclusively an applicant-funded agency). Although this may be appropriate in the context of other agency proceedings, it does not accord with our requirement that the applicant itself must bear the burden of these appeals. Hyatt, 625 F.3d at 1337.