DUNCAN, Circuit Judge:
 

 The United States Patent and Trademark Office (the "USPTO") and Booking.com ("Booking.com") both appeal the district court's summary judgment ruling regarding the protectability of the proposed trademark BOOKING.COM.
 
 [1]
 
 The USPTO appeals on the ground that the district court erred in concluding that BOOKING.COM is a protectable mark. Booking.com cross appeals, arguing that it should not be required to pay the USPTO's attorneys fees under
 
 15 U.S.C. § 1071
 
 (b)(3). For the reasons that follow we affirm as to both the appeal and the cross-appeal.
 

 I.
 

 Before we recount the facts of this case, we briefly discuss the legal trademark context in which it arises. Trademark law protects the goodwill represented by particular marks and serves the twin objectives of preventing consumer confusion between products and the sources of those products, on the one hand, and protecting the linguistic commons by preventing exclusive use of terms that represent their common meaning, on the other.
 
 OBX-Stock, Inc. v. Bicast, Inc.
 
 ,
 
 558 F.3d 334
 
 , 339-40 (4th Cir. 2009).
 

 In order to be protectable, marks must be "distinctive." To determine whether a proposed mark is protectable, courts ascertain the strength of the mark by placing it into one of four categories of distinctiveness, in ascending order: (1) generic,
 (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful.
 
 George & Co. v. Imagination Entm't Ltd.
 
 ,
 
 575 F.3d 383
 
 , 393-94 (4th Cir. 2009). Marks falling into the latter two categories are deemed inherently distinctive and are entitled to protection because their intrinsic nature serves to identify the particular source of a product. In contrast, descriptive terms may be distinctive only upon certain showings, and generic terms are never distinctive. This dispute concerns only the first two of these four categories, with Booking.com arguing the mark is descriptive and the USPTO arguing it is generic.
 

 A term is generic if it is the "common name of a product" or "the genus of which the particular product is a species," such as LITE BEER for light beer, or CONVENIENT STORE for convenience stores.
 
 OBX-Stock, Inc.
 
 ,
 
 558 F.3d at 340
 
 . Generic terms do not contain source-identifying significance-they do not distinguish the particular product or service from other products or services on the market.
 
 George & Co.
 
 ,
 
 575 F.3d at 394
 
 . Accordingly, generic terms can never obtain trademark protection, as trademarking a generic term effectively grants the owner a monopoly over a term in common coinage. If protection were allowed, a competitor could not describe his goods or services as what they are.
 
 CES Publ'g Corp. v. St. Regis Publ'ns, Inc.
 
 ,
 
 531 F.2d 11
 
 , 13 (2d Cir. 1975).
 

 In contrast, descriptive terms, which may be protectable, describe a "function, use, characteristic, size, or intended purpose of the product," such as 5 MINUTE GLUE or KING SIZE MEN'S CLOTHING.
 
 Sara Lee Corp. v. Kayser-Roth Corp.
 
 ,
 
 81 F.3d 455
 
 , 464 (4th Cir. 1996). In order to be protected, a descriptive term must have acquired secondary meaning.
 
 Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.
 
 ,
 
 240 F.3d 251
 
 , 254 (4th Cir. 2001). Secondary meaning indicates that a term has become sufficiently distinctive to establish a mental association in the relevant public's minds between the proposed mark and the source of the product or service.
 
 George & Co.
 
 ,
 
 575 F.3d at 394
 
 .
 

 Against this background, we consider the facts before us.
 

 II.
 

 Booking.com operates a website on which customers can book travel and hotel accommodations. It has used the name BOOKING.COM since at least 2006. In 2011 and 2012, Booking.com filed four trademark applications for the use of BOOKING.COM as a word mark and for stylized versions of the mark with the USPTO. Booking.com sought registration for, inter alia, Class 43 services, which include online hotel reservation services.
 
 [2]
 

 The USPTO examiner rejected Booking.com's applications, finding that the marks were not protectable because BOOKING.COM was generic as applied to the relevant services. In the alternative, the USPTO concluded that the marks were merely descriptive and that Booking.com had failed to establish that they had acquired secondary meaning as required for trademark protection. After the examiner denied Booking.com's motion for reconsideration, Booking.com appealed to
 the Trademark Trial and Appeal Board (the "TTAB").
 

 The TTAB affirmed the USPTO's four refusals of registration in three separate opinions. These opinions all concluded that BOOKING.COM was a generic term for the services offered, and therefore ineligible for trademark protection, because "booking" generically refers to "a reservation or arrangement to buy a travel ticket or stay in a hotel room" or "the act of reserving such travel or accommodation"; ".com" indicates a commercial website; and consumers would understand the resulting composite BOOKING.COM to primarily refer to an online reservation service for travel, tours, and lodging, which are the services proposed in Booking.com's applications.
 
 Booking.com B.V. v. Matal
 
 ,
 
 278 F.Supp.3d 891
 
 , 896 (E.D. Va. 2017) (summarizing the TTAB's findings). In the alternative, the TTAB concluded that BOOKING.COM is merely descriptive of Booking.com's services and that Booking.com had failed to demonstrate that the mark had acquired secondary meaning, as required for trademark protection.
 

 Booking.com appealed the TTAB's decisions by filing this civil action under
 
 15 U.S.C. § 1071
 
 (b) against the USPTO and the USPTO's director in the Eastern District of Virginia in April 2016.
 
 [3]
 
 It argued that BOOKING.COM was a descriptive or suggestive mark eligible for protection. In support of its argument, Booking.com submitted new evidence to the district court. This evidence included a "Teflon survey,"
 
 [4]
 
 indicating that 74.8% of consumers recognized BOOKING.COM as a brand rather than a generic service.
 

 The district court held that although "booking" was a generic term for the services identified, BOOKING.COM
 
 as a whole
 
 was nevertheless a descriptive mark. The district court further determined that Booking.com had met its burden of demonstrating that the proposed mark had acquired secondary meaning, and therefore was protectable, as to the hotel reservation services described in Class 43. The court therefore partially granted Booking.com's motion for summary judgment, ordering the USPTO to register two of the marks and remanded for further administrative proceedings as to the other two.
 

 The USPTO subsequently filed two motions. Pursuant to Federal Rule of Civil Procedure 59(e), the USPTO sought to amend the court's order requiring the USPTO to register the two trademarks, requesting instead that the court remand for further administrative proceedings. It also filed a motion for expenses pursuant to
 
 15 U.S.C. § 1071
 
 (b)(3), which would require Booking.com to pay $76,873.61 of the USPTO's expenses under
 
 15 U.S.C. § 1071
 
 (b)(3). These expenses included the salaries of the PTO's attorneys and paralegals that worked on the defense action. The district court denied the USPTO's motion to amend as to the two marks, reasoning that they were registerable as trademarks and that no further administrative proceedings were necessary. However, the district court granted the USPTO's motion for expenses. Both the USPTO and Booking.com appealed. The USPTO and Booking.com challenge, respectively, whether BOOKING.COM is protectable, and
 whether Booking.com must pay the USPTO's attorneys fees.
 

 III.
 

 We turn first to the USPTO's contention that the district court erred in concluding that BOOKING.COM is a protectable trademark. According to the USPTO, BOOKING.COM is a generic, not a descriptive, term that can never be protected.
 

 We review a district court's grant of summary judgment based on the conclusion that a mark is sufficiently distinctive to warrant trademark protection de novo.
 
 Retail Servs. Inc. v. Freebies Publ'g
 
 ,
 
 364 F.3d 535
 
 , 541-42 (4th Cir. 2004). The question of whether a proposed mark is generic is a question of fact that is subject to deferential review.
 
 See
 

 Swatch AG v. Beehive Wholesale, LLC
 
 ,
 
 739 F.3d 150
 
 , 155 (4th Cir. 2014) (citing
 
 Pizzeria Uno Corp. v. Temple
 
 ,
 
 747 F.2d 1522
 
 , 1533 (4th Cir. 1984) ).
 

 Critically to our analysis, the USPTO concedes that if BOOKING.COM may properly be deemed descriptive, the district court's finding that it has acquired secondary meaning was warranted. Rather, the USPTO only challenges the district court's determination that BOOKING.COM is not generic. Therefore, the limited question on appeal is whether the district court erred in finding that BOOKING.COM is not generic. For the reasons that follow, we conclude that the district court did not err in finding that there was no genuine issue of material fact on the issue of genericness and that, on these facts, BOOKING.COM is a protectable trademark.
 

 Before undertaking our analysis, two issues pertinent to the genericness inquiry bear further elaboration: first, who bears the burden of proving genericness, and second, the framework for determining whether a proposed mark is generic.
 

 A.
 

 We have never directly addressed the issue of which party bears the burden of proving genericness on appeal when registration of a mark is denied.
 
 [5]
 
 However, the Federal Circuit has long held, and we agree, that in registration proceedings, the USPTO "always bears the burden" of establishing that a proposed mark is generic.
 
 In re Cordua Rests., Inc.
 
 ,
 
 823 F.3d 594
 
 , 600 (Fed. Cir. 2016) ;
 
 see
 

 In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.
 
 ,
 
 828 F.2d 1567
 
 , 1571 (Fed. Cir. 1987) (explaining that the burden of proving genericness "
 
 remains
 
 with" the PTO) (emphasis added). This is so because finding a mark to be generic carries significant consequence, as it forecloses an applicant from any rights over the mark-once a mark is determined to be generic, it can never receive trademark protection.
 
 See
 
 2 J. Thomas McCarthy,
 
 McCarthy on Trademarks and Unfair Competition
 
 , § 12:12 (5th ed. 2018) (explaining that finding a mark to be generic is a "fateful step" as it may result in the "loss of rights which could be valuable intellectual property").
 

 We therefore hold here that the USPTO bears the burden of proving that
 BOOKING.COM is generic in the instant case.
 

 B.
 

 We next discuss the framework for determining whether a mark is generic. As we have discussed, generic terms are the "common name of a product or service itself."
 
 Sara Lee
 
 ,
 
 81 F.3d at 464
 
 . To determine whether a term is generic, we follow a three-step test: (1) identify the class of product or service to which use of the mark is relevant; (2) identify the relevant consuming public; and (3) determine whether the primary significance of the mark to the relevant public is as an indication of the nature of the class of the product or services to which the mark relates, which suggests that it is generic, or an indication of the source or brand, which suggests that it is not generic.
 
 [6]
 

 Glover v. Ampak, Inc.
 
 ,
 
 74 F.3d 57
 
 , 59 (4th Cir. 1996).
 

 Once a term is deemed generic, it cannot subsequently become non-generic. A term may be generic if, for example, it was previously determined to be generic by a court.
 
 Kellogg Co. v. Nat'l Biscuit Co.
 
 ,
 
 305 U.S. 111
 
 , 117,
 
 59 S.Ct. 109
 
 ,
 
 83 L.Ed. 73
 
 (1938) (finding that "shredded wheat" was generic because a court had already deemed it to be so). A term may also be deemed generic where evidence suggests that a term was "commonly used prior to its association with the products [or services] at issue."
 
 Hunt Masters
 
 ,
 
 240 F.3d at 254-55
 
 . In such cases of common usage, a court may find that a term is generic even without looking to evidence of consumer recognition.
 

 Id.
 

 For example, in
 
 Hunt Masters
 
 , we found that the term "crab house" was commonly used, as there were many restaurants called "crab houses" across the country,
 

 id.
 

 at 254 n.1, and concluded, therefore, that the district court did not err in declining to consider consumer survey evidence.
 

 If a term is deemed generic, subsequent consumer recognition of the term as brand-specific cannot change that determination.
 
 See
 

 Retail Servs., Inc.
 
 ,
 
 364 F.3d at 547
 
 . Indeed, courts have explained that "no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification," that user cannot claim the exclusive right through trademark protection to call the product or service by its common name.
 
 Abercrombie & Fitch Co. v. Hunting World, Inc.
 
 ,
 
 537 F.2d 4
 
 , 9 (2d Cir. 1976).
 

 In this case, neither party disputes the district court's finding at the first step: that the mark is used to identify the class or product to which it belongs-here, making hotel reservations for others. Nor do
 they disagree as to step two: that the relevant purchasing public consists of consumers who use hotel reservation services offered via the internet or in person. Instead, the dispute arises at the third step: the public's understanding of what the term BOOKING.COM primarily refers to.
 

 To ascertain the public's understanding of a term, courts may look to "purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications."
 
 Glover
 
 ,
 
 74 F.3d at 59
 
 . For example, in determining that the term "ale house" was generic for a facility that serves both food and beer, we considered newspaper articles and restaurant reviews that referred to such facilities as "ale houses," as well as the lack of evidence suggesting that it was not a generic term for such institutions.
 
 Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.
 
 ,
 
 205 F.3d 137
 
 , 140-41 (4th Cir. 2000).
 

 In assessing whether a term is understood by the relevant public to primarily refer to the service or the source, we look to the proposed mark
 
 as a whole
 
 ,
 
 see
 

 Hunt Masters
 
 ,
 
 240 F.3d at 254
 
 ("[A] mark must be considered as a whole to determine its validity."). Even where a proposed mark is a phrase or a compound term, such as "crab house" or "ale house," the relevant inquiry is the public's understanding of the entire mark, not its understanding of the mark's separate components independently.
 
 Estate of P.D. Beckwith, Inc. v. Comm'r of Patents
 
 ,
 
 252 U.S. 538
 
 , 545-46,
 
 40 S.Ct. 414
 
 ,
 
 64 L.Ed. 705
 
 (1920).
 

 With this framework for genericness in mind, we turn to the USPTO's contention on appeal that the district court erred in finding that BOOKING.COM is a descriptive, rather than a generic, mark.
 

 C.
 

 We hold that the district court, in weighing the evidence before it, did not err in finding that the USPTO failed to satisfy its burden of proving that the relevant public understood BOOKING.COM, taken
 
 as a whole
 
 , to refer to general online hotel reservation services rather than Booking.com the company. Because the USPTO concedes that, if the mark is descriptive, it is protectable, this ends our inquiry. In affirming the district court's finding, we reject the USPTO's contention that adding the top-level domain (a "TLD") .com to a generic second-level domain (an "SLD") like booking can never yield a non-generic mark. We turn first to the district court's finding on genericness before addressing the USPTO's proposed rule.
 

 i.
 

 Genericness is a question of fact to which the district court, as the trier of fact, is accorded great deference.
 
 [7]
 

 See
 

 Swatch AG
 
 ,
 
 739 F.3d at 155
 
 . Here, in finding that the public's understanding of BOOKING.COM, taken as a whole, establishes it as a descriptive mark rather than a generic term, the district court relied on two main factors: the USPTO's lack of evidence demonstrating that the public uses "booking.com" generically, and Booking.com's Teflon survey. We conclude that
 the district court did not err in finding that the evidence weighed in favor of finding BOOKING.COM to be non-generic.
 

 First, the district court found "highly relevant" the absence of evidence by the USPTO that consumers commonly refer to online hotel reservation services as "bookings.com."
 
 Booking.com B.V.
 
 ,
 
 278 F.Supp.3d at 914
 
 . Instead, the court determined that the USPTO's evidence demonstrated that such services are referred to as "booking website(s)," or "booking site(s)."
 

 Id.
 

 While the USPTO identified other domain names that contain "booking.com"-such as "hotelbooking.com" and "ebooking.com"-to support its argument that the relevant public understands BOOKING.COM to refer to online hotel booking services, the district court did not err in finding this evidence less probative of common usage. It is true that some courts have found the use of a proposed mark in longer domain names to be evidence in support of finding that term generic.
 
 See, e.g.
 
 ,
 
 Advertise.com, Inc. v. AOLAdvertising, Inc.
 
 ,
 
 616 F.3d 974
 
 , 980-81 (9th Cir. 2010) (finding that the way in which ADVERTISING.COM was used in other domain names was evidence of genericness);
 
 In re Hotels.com, L.P.
 
 ,
 
 573 F.3d 1300
 
 , 1304 (Fed. Cir. 2009) (same for HOTELS.COM);
 
 In re Reed Elsevier Props., Inc.
 
 ,
 
 482 F.3d 1376
 
 , 1380 (Fed. Cir. 2007) (same for LAWYERS.COM). We note, however, that although those courts recognized that the inclusion of the proposed mark in longer domain names was strong evidence of genericness, they nonetheless remained open to considering consumer surveys to determine the public's understanding of the proposed mark.
 
 See, e.g.
 
 ,
 
 In re Hotels.com
 
 ,
 
 573 F.3d at 1304-05
 
 (finding that the TTAB did not err in determining that the term was generic, citing in part concerns arising from the methodology of the applicant's consumer survey). Moreover, using the characters "booking.com" or "bookings.com" in a longer domain name does not necessarily mean that BOOKING.COM is generic. Unlike "hotels" or "lawyers," "booking" is used to describe a plethora of reservation services, including, for example, theatrical or musical engagements.
 
 See
 

 Booking.com B.V.
 
 ,
 
 278 F.Supp.3d at 904
 
 (quoting Random House: Unabridged Dictionary (2d ed. 1993)). Including booking.com in a longer domain name therefore does not necessarily demonstrate that consumers would understand BOOKING.COM to identify any website that provides hotel reservation services. In fact, the record evidence demonstrates the opposite.
 

 The USPTO challenges the court's weighing of this evidence, contending that the district court erred in emphasizing that the public does not
 
 use
 
 "booking.com" to refer to the relevant services, and instead should have evaluated whether the public would
 
 understand
 
 the term to refer to those services. We agree with the USPTO that the ultimate inquiry in determining whether a term is generic is what the public
 
 understands
 
 the proposed mark to mean.
 
 Glover
 
 ,
 
 74 F.3d at 59
 
 . Nonetheless, courts have considered usage to be probative of the public's understanding.
 
 Compare
 

 In re Dial-A-Mattress
 
 ,
 
 240 F.3d 1341
 
 , 1346 (Fed. Cir. 2001) (finding that a mark was not generic where there was no evidence that the relevant public referred to the class of shop-at-home mattress retailers as "1-888-M-A-T-R-E-S-S"),
 
 with
 

 Frito-Lay N. Am. Inc. v. Princeton Vanguard, LLC
 
 ,
 
 124 U.S.P.Q.2d 1184
 
 at *6-10 (TTAB 2017) (finding "pretzel crisp" to be generic where the record evidence, including newspaper articles and food blogs, used the term to refer to the genus of snack products rather than a particular brand),
 
 and
 

 Ale House Mgmt.
 
 ,
 
 205 F.3d at 140-41
 
 (finding "ale house" to be generic for facilities that serve food and beer where newspaper articles and restaurant reviews referred to such facilities as "ale houses"). It is therefore not error for a court to consider, as the court did here, evidence of the public's use of a term in evaluating its primary significance to the public.
 
 [8]
 
 And in any event, as we will discuss, the consumer surveys in this record suggest that the public primarily
 
 understands
 
 BOOKING.COM to indicate the company rather than the service.
 

 Second, the district court also considered Booking.com's Teflon survey, which demonstrates that 74.8% of respondents identified BOOKING.COM as a brand name, rather than as a general reference to hotel reservation websites. Such consumer surveys are the "preferred method of proving genericness."
 
 Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.
 
 ,
 
 786 F.3d 960
 
 , 970 (Fed. Cir. 2015) (citation omitted). Indeed, courts have recognized that "[c]onsumer surveys have become almost de rigueur in litigation over genericness."
 
 Berner Int'l Corp. v. Mars Sales Co.
 
 ,
 
 987 F.2d 975
 
 , 982-83 (3d Cir. 1993) (internal quotation marks and citation omitted). Accordingly, where, as here, the district court found that the survey was methodologically sound, the survey is strong evidence that the public does not understand BOOKING.COM to refer to the proposed mark's generic meaning.
 

 On appeal, the USPTO does not contest the validity of the survey or its methodology. Instead, it relies on dicta in
 
 Hunt Masters
 
 to argue that the district court erred in considering the survey at all. 240 F.3d at 254-55. Its reliance is misplaced; our reasoning in that case does not apply here. In
 
 Hunt Masters
 
 , we considered whether the owners of "the Charleston Crab House," who sought to enjoin a competitor from using the name "The Crab House," had a protected proprietary interest in the term "crab house." We declined to find such an interest because we determined that "crab house" was a generic term referring to a class of restaurants that serve crabs.
 
 Id.
 
 at 254. In so determining, we held that the district court did not err in declining to consider the plaintiff's consumer survey. We explained that there are two ways in which terms may be classified as generic-"(1) where the term began life as a 'coined term' " that had become generic through common usage, and "(2) where the term was commonly used prior to its association with the products at issue"-and that while consumer surveys are relevant to determining whether a term is generic in the former scenario, they are not in the latter.
 
 Id.
 
 at 254-55. Contrary to the USPTO's contention,
 
 Hunt Masters
 
 does not control where, as here, the district court determined based on the dearth of evidence in the record that the proposed mark was not commonly used. As such, the proposed mark does not fall within the category of terms for which survey evidence is irrelevant.
 

 Weighing the evidence before it, the district court did not err in finding that the USPTO did not satisfy its burden of showing that BOOKING.COM is generic. It is axiomatic that determinations regarding the relative weight of evidence are left for the trier of fact.
 
 See
 

 In re Hotels.com
 
 ,
 
 573 F.3d at 1305-06
 
 (finding that the trier of fact, the TTAB, could reasonably have given controlling weight to dictionary definitions
 and similar uses of "hotels" with a .com suffix over a consumer survey with questionable methodology). Here, the district court, acting as the trier of fact in reviewing Booking.com's trademark application de novo, did not err in placing greater weight on the consumer survey over other evidence, like dictionary definitions, in assessing the primary significance to the public.
 
 See
 

 Mars Sales Co.
 
 ,
 
 987 F.2d at 982-83
 
 (explaining that direct consumer evidence, e.g., consumer surveys and testimony, "is preferable to indirect forms of evidence" like dictionaries and trade journals).
 

 We therefore conclude that the district court did not err in finding that BOOKING.COM is a descriptive, rather than generic, mark.
 

 ii.
 

 The USPTO nevertheless contends that adding the top-level domain ".com" to a generic second-level domain like "booking" is
 
 necessarily
 
 generic, and that the district court therefore erred in finding that BOOKING.COM was non-generic. The USPTO advances two theories as reasons for adopting a per se rule against protecting terms like BOOKING.COM. For the reasons that follow, we decline to adopt such an approach under either theory.
 

 First, the USPTO relies on an 1888 Supreme Court case to argue that, as a matter of law, adding .com to a generic SLD like booking can never be nongeneric. In
 
 Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.
 
 ,
 
 128 U.S. 598
 
 , 602-03,
 
 9 S.Ct. 166
 
 ,
 
 32 L.Ed. 535
 
 (1888), the Court held that the addition of commercial indicators such as "Company" to terms that merely describe classes of goods could not be trademarked, like "Grain Company" or, as the Dissent provides, "The Grocery Store." According to the USPTO, ".com" is analytically indistinct from "company," as it is a generic identifier for an entity operating a commercial website, and therefore its addition to a generic term can never be protected. However,
 
 Goodyear
 
 was decided almost sixty years before the Lanham Act and, crucially, did not apply the primary significance test. No circuit has adopted the bright line rule for which the USPTO advocates-indeed, sister circuits have found that when ".com" is added to a generic TLD, the mark may be protectable upon a sufficient showing of the public's understanding through consumer surveys or other evidence.
 
 See, e.g.
 
 ,
 
 Advertise.com, Inc.
 
 ,
 
 616 F.3d at
 
 982 ;
 
 In re Hotels.com
 
 ,
 
 573 F.3d at 1304-05
 
 . We similarly decline to do so here.
 

 Second, the USPTO argues that the proposed mark is per se generic because it is nothing more than the sum of its component parts. It contends that "booking" is a generic term for hotel reservation services, that ".com" is generic for an online company, and that when combined the resulting composite is generic for the online booking services at issue here because a member of the relevant public would understand BOOKING.COM to name an online booking website. Therefore, the USPTO contends, BOOKING.COM is generic. We disagree that it is necessarily so.
 

 We begin by discussing the genericness inquiry as it applies to compound terms. When confronted with a compound term like PRETZEL CRISPS, courts may consider as a first step the meaning of each of the term's component marks; but as we explained in
 
 Hunt Masters
 
 , the ultimate inquiry examines what the public primarily perceives the term
 
 as a whole
 
 to refer to. 240 F.3d at 254. For example, in determining whether PRETZEL CRISPS is generic, a court may first determine based on dictionary definitions and other competent sources that PRETZEL is primarily understood to refer to the genus of
 pretzels, and that CRISPS would be understood as primarily referring to crackers.
 
 Frito-Lay N. Am., Inc.
 
 ,
 
 124 U.S.P.Q.2d 1184
 
 at *4, 21. But the court must also consider evidence-such as use in newspaper articles or food blogs-to determine whether the term PRETZEL CRISPS is perceived primarily to refer to a crispy pretzel or to a particular source.
 
 Id.
 
 at *22.
 

 Where the proposed mark is a composite that includes .com, we clarify that, contrary to the district court's suggestion, .com does not itself have source-identifying significance when added to an SLD like booking.
 
 [9]
 

 See, e.g.
 
 ,
 
 In re Hotels.com
 
 ,
 
 573 F.3d at 1304
 
 (explaining that the generic term "hotels" did not lose its generic character by placement in the domain name HOTELS.COM);
 
 McCarthy on Trademarks
 
 , § 7:17.50 (explaining that a TLD like .com "has no source indicating significance and cannot serve any trademark purpose"). Merely appending .com to an SLD does not render the resulting domain name non-generic because the inquiry is whether the public primarily understands the term
 
 as a whole
 
 to refer to the source or the proffered service.
 
 [10]
 

 For the same reason, neither is it the case, as the USPTO would have it, that assuming booking and .com are each generic terms according to their respective dictionary definitions, and that together they describe the service provided, this necessarily ends the genericness inquiry. Within this inquiry, dictionary definitions, though "relevant and sometimes persuasive" to the genericness inquiry based on the assumption that such definitions generally reflect the public's perception of a word's meaning, are not necessarily dispositive or controlling.
 
 Retail Servs., Inc.
 
 ,
 
 364 F.3d at 544-45
 
 . Instead, where, as here, the court found that the term was not previously commonly used, it may consider additional evidence like consumer surveys in making its genericness determination.
 
 [11]
 
 This is particularly true where the mark involves a domain name. Unlike general terms such as "crab house,"
 
 see
 

 Hunt Masters
 
 , 240 F.3d at 254-55, looking to the component parts of a domain name may not unambiguously represent the primary significance of the term as a whole given that the relevant public may recognize domain names to indicate specific locations
 on the internet.
 
 See
 

 In re Hotels.com
 
 ,
 
 573 F.3d at 1305
 
 (acknowledging that "consumers may automatically equate a domain name with a brand name") (citation omitted). Thus, even where the domain-name-as-mark technically describes the service provided, it does not necessarily follow that the public commonly understands the mark to refer to the service broadly speaking.
 

 We therefore decline to adopt a per se rule and conclude that when ".com" is combined with an SLD, even a generic SLD, the resulting composite may be non-generic where evidence demonstrates that the mark's primary significance to the public as a whole is the source, not the product.
 

 This approach comports with that taken by our sister circuits, who have similarly declined to adopt a per se rule against protecting domain names, even where they are formed by combining generic terms with TLDs.
 
 See, e.g.
 
 ,
 
 Advertise.com Inc.
 
 ,
 
 616 F.3d at
 
 978-79 ;
 
 In re Steelbuilding.com
 
 ,
 
 415 F.3d 1293
 
 , 1299 (Fed. Cir. 2005). These courts have left open the possibility that in "rare circumstances" a TLD may render a term sufficiently distinctive to be protected as a trademark.
 
 See
 

 In re Steelbuilding.com
 
 ,
 
 415 F.3d at 1299
 
 .
 

 Tellingly, even where courts have found that the individual components of a domain name mark are independently generic, and that when added together the resulting composite merely describes the genus of the service provided, courts still considered other evidence such as consumer surveys in determining whether the mark was generic. For instance, in determining whether ADVERTISING.COM was generic, the Ninth Circuit explained that even though both "advertising" and ".com" were generic, and that ADVERTISING.COM conveyed only the genus of the services offered, it was possible "that
 
 consumer surveys or other evidence
 
 might ultimately demonstrate that [the] mark is valid and protectable."
 
 Advertise.com, Inc.
 
 ,
 
 616 F.3d at 982
 
 (emphasis added);
 
 see
 

 In re Hotels.com
 
 ,
 
 573 F.3d at 1304-05
 
 (considering a consumer survey regarding the public's understanding of HOTELS.COM even though it determined that "hotels" and ".com" were independently generic and that the combination did not produce new meaning). While these courts have generally found the resulting composite of adding ".com" to certain SLDs to be generic,
 
 [12]
 
 they have nonetheless acknowledged that on rare occasions such marks may be non-generic. Here, the district court did not err in determining that this case presents one such rare occasion where the record evidence supported a finding that the USPTO failed to meet its burden of proving that the public primarily understood BOOKING.COM to refer to the genus of online hotel reservation services, rather than the company or brand itself.
 

 We are not unsympathetic to the USPTO's concerns that granting trademark protection over BOOKING.COM may prevent other companies
 from using the mark.
 
 See
 

 OBX-Stock, Inc.
 
 ,
 
 558 F.3d at 339-40
 
 (noting trademark law's twin concerns). However, these concerns are assuaged by two considerations. First, because trademarks only protect the relevant service-here, the district court granted protection as to hotel reservation services but not travel agency services-protection over BOOKING.COM would not necessarily preclude another company from using, for example, carbooking.com or flightbooking.com.
 
 [13]
 
 Second, the purported overbreadth of the mark can be addressed in proceedings regarding the scope of the trademark's protection. To enforce a mark, a plaintiff must prove in a trademark infringement suit that there is a "likelihood of confusion"-that is, whether "the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question."
 
 George & Co.
 
 ,
 
 575 F.3d at 393
 
 (citation omitted);
 
 Pizzeria Uno
 
 ,
 
 747 F.2d at 1527
 
 . Infringement plaintiffs often must show "actual confusion."
 
 George & Co.
 
 ,
 
 575 F.3d at 393
 
 . Given that domain names are unique by nature and that the public may understand a domain name as indicating a single site, it may be more difficult for domain name plaintiffs to demonstrate a likelihood of confusion.
 

 In sum, adding ".com" to an SLD can result in a non-generic, descriptive mark upon a showing of primary significance to the relevant public. This is one such case. Based on the record before it, the district court properly found that the USPTO did not meet its burden of proving that "booking.com" is generic. We therefore affirm the court's finding that BOOKING.COM is descriptive. Because the USPTO does not challenge the district court's finding that BOOKING.COM has acquired secondary meaning where the mark is deemed descriptive, we affirm the district court's partial grant of summary judgment finding that BOOKING.COM is protectable as a trademark.
 

 IV.
 

 We turn now to Booking.com's contention that it should not be required to pay the USPTO's attorneys fees under
 
 15 U.S.C. § 1071
 
 (b)(3). Under the Lanham Act, a dissatisfied trademark applicant may seek review of an adverse ruling on his trademark application either by appealing the USPTO's ruling to the Federal Circuit,
 
 15 U.S.C. § 1071
 
 (a)(1), or by commencing a de novo action in a federal district court,
 

 id.
 

 § 1071(b)(1). If the applicant chooses to appeal to the Federal Circuit, the appeal is taken "on the record" before the USPTO,
 

 id.
 

 § 1071(a)(4), and the court defers to the USPTO's factual findings unless they are unsupported by substantial evidence.
 
 Shammas v. Focarino
 
 ,
 
 784 F.3d 219
 
 , 225 (4th Cir. 2015). In contrast, if he chooses to appeal in a district court, the parties may conduct discovery and submit evidence beyond the record before the USPTO, which the district court reviews de novo as the trier of fact.
 

 Id.
 

 Crucially, if the applicant decides to challenge the USPTO's ruling in the district court, the applicant must pay "
 
 all the expenses of the proceeding
 
 ... whether the final decision is in favor of such party or not."
 
 15 U.S.C. § 1071
 
 (b)(3) (emphasis added).
 

 Pursuant to this statute, the district court granted the USPTO's motion requiring
 Booking.com to pay $76,873.61 of its expenses, $51,472.53 of which constituted the prorated salaries of its attorneys and paralegals who worked on the matter. In reaching this decision, the district court relied on our precedent in
 
 Shammas
 
 , which held that "all the expenses of the proceeding" under § 1071(b)(3) includes attorneys fees.
 

 Id.
 

 at 224
 
 .
 

 In so holding in
 
 Shammas
 
 , we first concluded that the "American Rule"-the bedrock principle that each litigant pays his own attorneys fees unless Congress has specifically and explicitly provided otherwise-was inapplicable to the provision because the rule applies "only where the award of attorneys fees turns on whether a party seeking fees has prevailed to at least some degree."
 
 784 F.3d at 223
 
 . Accordingly, we interpreted the phrase "all the expenses of the proceeding" for "its ordinary meaning without regard to the American Rule," and concluded that it included attorneys fees.
 

 Id.
 

 at 224
 
 .
 

 Whether the American Rule applies to § 1071(b)(3), however, has since been called into question. Relying on our decision in
 
 Shammas
 
 , the Federal Circuit previously held that a nearly identical provision of the Patent Act,
 
 35 U.S.C. § 145
 
 , included attorneys fees.
 
 Nantkwest, Inc. v. Matal
 
 ,
 
 860 F.3d 1352
 
 , 1355 (Fed. Cir. 2017). Subsequently, however, the Federal Circuit reversed its decision en banc, squarely rejecting our reasoning in
 
 Shammas
 
 ; it now holds that attorneys fees are not covered under that provision.
 
 Nantkwest, Inc. v. Iancu
 
 ,
 
 898 F.3d 1177
 
 , 1185 (Fed. Cir. 2018) (en banc). Moreover, the year after we decided
 
 Shammas
 
 , the Supreme Court applied the American Rule to a bankruptcy statute that did not mention a prevailing party.
 
 See
 

 Baker Botts L.L.P. v. ASARCO LLC
 
 , --- U.S. ----,
 
 135 S.Ct. 2158
 
 , 2165,
 
 192 L.Ed.2d 208
 
 (2015).
 

 These subsequent developments suggest that the American Rule's requirement that Congress "clearly and directly" express an intent to deviate from that rule may apply to § 1071(b)(3) -a statute that, if read to include attorneys fees, anomalously requires an appealing party to pay the prorated salaries of government attorneys.
 

 Nonetheless,
 
 Shammas
 
 remains the law in this circuit, and as long as we continue to be bound by that precedent we must affirm the district court's grant of attorneys fees.
 

 V.
 

 For the foregoing reasons, we affirm the district court's partial grant of summary judgment to Booking.com as to the protectability of its trademark applications, and we affirm the district court's grant of the USPTO's motion for expenses.
 

 AFFIRMED
 

 Throughout this opinion, we use Booking.com to refer to the Plaintiff-Appellant and BOOKING.COM to refer to the proposed mark.
 

 The applications also identified Class 39 services, which include "travel and tour ticket reservation services" and "online travel and tourism services."
 
 Booking.com B.V. v. Matal
 
 ,
 
 278 F.Supp.3d 891
 
 , 896-97 (E.D. Va. 2017). Because the district court found that the marks were only protectable as to Class 43 services and remanded with respect to Class 39 services, and Booking.com does not challenge this ruling on appeal, we consider only whether BOOKING.COM is protectable as to Class 43 services.
 

 As we discuss further below, Booking.com could have appealed to the Federal Circuit but declined to do so.
 

 Teflon surveys are the "most widely used survey format to resolve a genericness challenge." 2
 
 McCarthy on Trademarks
 
 at § 12:16. These surveys explain the distinction between generic names and trademark or brand names and then ask survey respondents to identify a series of names as common or brand names.
 

 In trademark infringement proceedings, we have held that the burden of proof lies with the party claiming that a previously registered mark is generic because there is a presumption of validity.
 
 See
 

 Glover v. Ampak, Inc.
 
 ,
 
 74 F.3d 57
 
 , 59 (4th Cir. 1996). Where a mark is not registered, however, and the alleged infringer asserts genericness as a defense, the plaintiff bears the burden of proving that the mark is not generic.
 
 See
 

 Ale House Mgmt. Inc. v. Raleigh Ale House, Inc.
 
 ,
 
 205 F.3d 137
 
 , 140 (4th Cir. 2000).
 

 The Lanham Act codifies the primary significance test as the test for determining whether a registered trademark has become generic in
 
 cancellation
 
 of registration proceedings.
 
 15 U.S.C. § 1064
 
 (3) ("The primary significance of the registered mark to the relevant public ... shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used.");
 
 see
 

 Glover
 
 ,
 
 74 F.3d at 59
 
 . However, we and the Federal Circuit have also applied the primary significance test to determine genericness in registration proceedings.
 
 See
 

 In re 1800Mattress.com IP, LLC
 
 ,
 
 586 F.3d 1359
 
 , 1362-63 (Fed. Cir. 2009) (applying a two-step genericness inquiry, asking in part whether the term sought to be registered is "understood by the relevant public to refer to that genus of goods or services") (citation omitted);
 
 In re Reed Elsevier Props., Inc.
 
 ,
 
 482 F.3d 1376
 
 , 1378 (Fed. Cir. 2007) (same);
 
 see also
 

 America Online, Inc. v. AT&T Corp.
 
 ,
 
 243 F.3d 812
 
 , 822 (4th Cir. 2001) (determining that a mark was generic because the evidence "d[id] not reveal that the
 
 primary significance
 
 of the term" was the source rather than its generic meaning) (emphasis added).
 

 Specifically, we defer to the district court's factual finding regarding the primary significance of the mark to the public-a finding for which the court applied the proper legal analysis-and
 
 not
 
 the court's determination as to the trademark significance of the fact that a domain name like "booking.com" necessarily refers only to a single source. In fact, we conclude that the court erred in this latter determination, discussed
 
 infra
 
 ; but contrary to the Dissent's position, such error does not affect the court's
 
 separate
 
 factual finding as to primary significance.
 
 See
 

 Booking.com B.V.
 
 ,
 
 278 F.Supp.3d at 913-18
 
 .
 

 Because the relevant inquiry is what the mark's primary significance is to the public, we do not consider the district court's suggestion, relying on Booking.com's linguistic expert, that "linguistic understanding" cannot be divorced from use.
 
 Booking.com B.V.
 
 ,
 
 278 F.Supp.3d at 914
 
 (alteration and citation omitted).
 

 The district court concluded that a TLD like .com generally has source-identifying significance when added to an SLD like booking, and that a mark composed of a generic SLD like booking together with a TLD is usually a descriptive mark eligible for protection upon a showing of secondary meaning. We decline to adopt a rule that goes so far. Such a rule would effectively make
 
 any
 
 domain name distinctive, which oversteps the focus of our trademark jurisprudence on a mark's primary significance to the public. However, because we find other evidentiary bases to affirm the district court, as discussed
 
 supra
 
 , our rejection of this approach does not alter the outcome of our inquiry.
 

 Because we do not adopt the district court's approach to the addition of TLDs to SLDs, we need not address the USPTO's contention that the district court impermissibly relied on BOOKING.COM's functional role as a web address to establish non-genericness, where functional features are precluded from trademark protection.
 

 As we have discussed, once a term has been deemed generic, consumer recognition will not save it from being generic.
 
 See
 

 Retail Servs., Inc.
 
 ,
 
 364 F.3d at 547
 
 . Here, BOOKING.COM was not already deemed generic because it had not been so determined by a prior court, and the district court expressly found that it was not commonly used. Accordingly, the USPTO's reliance on cases where terms like "You Have Mail" and "Freebies" were found to be commonly used to argue that consumer recognition cannot render BOOKING.COM non-generic, is misplaced.
 
 See
 

 America Online
 
 ,
 
 243 F.3d at
 
 822 and
 
 Retail Services, Inc.
 
 ,
 
 364 F.3d at 547
 
 .
 

 See, e.g.
 
 ,
 
 In re Hotels.com
 
 ,
 
 573 F.3d at 1304
 
 (HOTELS.COM) ;
 
 In re 1800Mattress.com IP, LLC
 
 ,
 
 586 F.3d at 1364
 
 (MATTRESS.COM) ;
 
 In re Reed Elsevier Props., Inc.
 
 ,
 
 482 F.3d at 1378
 
 (LAWYERS.COM). We note, however, that on appeal from the TTAB, the Federal Circuit applies a more deferential standard of review-reviewing factual findings for substantial evidence-than that applied by the district court, which reviews the TTAB's decision de novo.
 
 See
 

 Shammas v. Focarino
 
 ,
 
 784 F.3d 219
 
 , 225 (4th Cir. 2015). Given this deferential standard of review, the Federal Circuit may affirm a genericness holding where the district court, reviewing the extant evidence and any new evidence de novo, may have reached a different conclusion.
 

 As the district court noted, WORKOUT.COM, ENTERTAINMENT.COM, and WEATHER.COM are registered marks that have not precluded domain names such as MIRACLEWORKOUT.COM, WWW.GOLIVE-ENTERTAINMENT.COM, and CAMPERSWEATHER.COM.
 
 Booking.com B.V.
 
 ,
 
 278 F.Supp.3d at
 
 911 & n.6 (taking judicial notice of such marks in the public record).